A. T. & Santa Fé Rld. Co. v. Campbell.

## A. T. & S. F. RAILROAD CO. v. NEIL CAMPBELL.

1. NEGLIGENCE; *Fires Set by Locomotive Engine; Condition and Management of Engine.* In an action to recover damages for property destroyed by fire communicated from an engine, in which it appears that the engine in passing over a distance of a few miles, with an ordinary load, set the adjacent grass and stubble on fire several times; that though this engine had been backward and forward over the same road during all of that fall, and though other engines were passing and repassing, some upon the same day, yet no fires had been communicated other than these upon this day from this engine; that engines in good order, and properly supplied with precautions to prevent the escape of fire, and properly and carefully managed, seldom communicate fire to the adjacent grass and stubble; and where it appears that something seemingly heavier than the smoke, and separating from it, was seen to be thrown out of the smoke-stack, and fall into the neighboring stubble, and almost immediately the stubble was in a blaze, and thereafter in this burnt stubble a piece of coal is found surrounded by ashes, and apparently the remnant of a piece of coal six inches in diameter which had been there burning; and where the conductor of the train, at the first station after passing these fires, telegraphed to the assistant superintendent of the road "that the engine was setting the country on fire;" and where it appears from the testimony of experts that where an engine starts a succession of fires, and others operated along the same road under similar circumstances of wind and weather do not start any, the difference can be reasonably accounted for only upon the supposition of defect in the construction, condition, or management of the engine doing the damage: *Held,* That a verdict finding negligence would be sustained, although it appeared that a very strong wind was blowing at the time of the fires, that several competent witnesses who examined the engine at and shortly after the fire testified that it was in perfect order and supplied with the best appliance for the escape of fire, that as many testified that the engineer was a competent and careful engineer, and that he testified that he used all possible care and precautions to prevent the escape of sparks and fire upon that day, and although there was no direct testimony contradicting these witnesses, and that it was impossible for any one from the testimony to point out in what respect, if at all, the engine was defective, or out of order, or the engineer guilty of negligence.

2. VERDICTS; *Answers to Particular Questions; Compelling Answers; Exceptional Cases; Duty of Court.* While the rule is general, that wherever in addition to a general verdict a question of fact is submitted

.to the court which is proper and pertinent, and an answer can be deduced from the testimony, it is the duty of the court to compel an answer, and refuse to receive a verdict until one is made, yet, where the question is not as to one of the issuable, essential, and principal facts, but runs to one of the minor and subdivided facts into which every principal fact may be resolved and reresolved almost indefinitely, and the entire testimony leaves in uncertainty the existence of several of such minor facts (including the one inquired about) either of which would be sufficient to sustain the general conclusion reached, the court may sometimes properly receive and sustain a verdict where the only answer to the question is, that the jury do not know. But it should never do so when it is evident that a determination of the fact is essential to the conclusion reached in the general verdict, nor where it is apparent that the jury by improperly professing ignorance have sought to leave the facts in such uncertainty as unduly to hinder any subsequent inquiry into the correctness of their verdict.

*Error from Lyon District Court.*

CAMPBELL sued the *Railroad Company*, claiming in his petition that, on the 12th of October 1871, the defendant while running a train of cars through the county of Lyon on its line of railroad, propelled by a steam locomotive, by reason of the negligent and careless management of said locomotive, and by reason of said locomotive being out of repair, and in an unsafe condition, fire was set to the grass on plaintiff's land in said county adjoining the track, and burned up and destroyed 250 rods of fence, 75 tons of hay, 30 tons of straw, 37 apple trees, and a grove of cottonwood trees, to his damage $1,100. The answer of the company is a general denial, with a special averment that, on the day of the injury complained of, the locomotive alleged to have set out the fire was in good condition and operated in a careful manner by competent and careful servants of defendant. Trial at the June Term 1874. The case was tried by a jury. The following is the charge to the jury, referred to in the opinion:

"*Gentlemen of the Jury:* This is an action for damages caused by fire originating from sparks emitted from one of the locomotive engines of the defendant, on the 12th of October 1871, by reason, as plaintiff alleges, of the said engine being out of repair, and being in an unsafe and a dangerous condition, and by the unskillful, negligent and careless man-

14—16 KAS.

ner in which said engine was managed by defendant's servants. The defendant company answers by a general denial.

"You are the exclusive judges of the evidence, and of the facts proved; also, of the credibility of the witnesses, and of the weight to be given to their testimony.

"In order to recover in this action, the plaintiff must prove by a preponderance of testimony, first, that his property was, on the 12th of October 1871, damaged by fire originating from one of the locomotive engines of the defendant; second, that said fire was caused, either by the engine causing said fire being out of repair, or from being in dangerous or an unsafe condition, or that said fire was caused either by the careless, unskillful, incompetent, or negligent manner in which said engine was managed by the servants of said defendant at the time of the occurrence of said fire. The gist of the action is, negligence on the part of defendant; and unless the plaintiff satisfies you by competent evidence, that the fire complained of was caused by the negligent conduct of the defendant's servants, or some one of them, or by a defective engine, he cannot recover.

"Negligence may be shown by circumstances; and in this case it would be unreasonable to require the plaintiff to show by direct evidence a defect in the engine, or mismanagement of the same, these facts being peculiarly within the knowledge of the defendant. Therefore, if you are satisfied from the evidence that the defendant's engine causing the fire complained of caused two or more other fires on the same day, and under similar circumstances as to wind and weather, and that the ordinary working of an engine under like circumstances does not ordinarily produce such results, or that engines properly constructed and properly managed do not ordinarily under like circumstances produce such results, or that other engines of the defendant passed over the same road where the fires were set, on the same day, and under similar circumstances as to wind and weather, and caused no fires, these facts and circumstances would be sufficient to establish, *prima facie*, negligence; and unless the defendant satisfies you from the evidence that its engine causing the fires was properly constructed, in good order, and properly managed, the plaintiff would be entitled to recover his damages caused by said fire, as shown by the evidence.

"If you believe from the evidence that the fire complained of was caused by reason of the defendant's engine being out of repair, or in an unsafe condition, or by the careless or un-

skillful manner in which it was managed by the servants of defendant, you will find for the plaintiff.

"If you believe from the evidence that at the time the fire complained of was set by the defendant's engine, that said engine was properly constructed, in good repair, and skillfully and carefully managed by competent servants, you will be justified in attributing the cause of said fire to some unavoidable accident, and will find for the defendant."

Verdict and judgment in favor of *Campbell* for full amount claimed. New trial refused, and the *Railroad Company* brings the case here on error.

*Ross Burns*, and *J. G. Waters*, for plaintiff in error.

*Ruggles & Sterry*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action by defendant in error to recover damages for property consumed by fire, claimed to have been started from one of the engines of the railroad company. The fire was the same as that which destroyed the property of Wm. M. Stanford, a judgment in whose favor therefor was in 1874 sustained by this court. (*A. T. & S. F. Rld. Co. v. Stanford*, 12 Kas. 354.) There are also three other actions now pending in this court to recover damages done by the same fire, or fires from the same engine upon the same day. Of course, as to all questions then decided, nothing need now be said. Many of the questions in that case do not arise in this; and some additional matters are here presented.

And the first question we shall examine is, as to whether the verdict is contrary to the evidence. And here the only matter of difficulty is as to negligence on the part of the company. The evidence thereon may be briefly stated as follows: There is the testimony of some fifteen witnesses who saw the train drawn by the engine No. 9 passing from Emporia westward, and immediately after it passed along saw fires starting in the prairie grass beside the track. The exact number of fires started, as seen by the witnesses, does not

clearly appear; but there were quite a number — one at Emporia, several near the county line between Lyon and Chase counties, and one at least near Cottonwood station. Though trains were passing and repassing over this road during that fall, some upon the same day, it appears that they started no fires. Several competent witnesses testified that an engine in good condition, and well managed, seldom throws out sparks so as to start fires along the road, and that if two engines passed over a road upon the same day, under the same conditions of wind and weather, and one started no fires while the other started a succession of them, this difference could be reasonably accounted for only on the supposition that the latter was badly constructed or managed. One witness testified to seeing something coming from the smoke-stack of this engine, a little heavier than smoke, separating from the smoke and falling into a field, and almost immediately thereafter a fire starting up in the surrounding stubble. He thought this object looked like a string of dust, as he expressed it. He was at the time standing some little distance from the engine, but in plain view. Another witness who went into this field, after the fire, found there a burnt piece of coal about the size of half a dollar, surrounded by ashes and apparently the remnant of a larger piece of coal, one (say six inches in diameter) which had there been burning. The conductor of the train, who had noticed the fires, when it reached Cottonwood Falls telegraphed the assistant superintendent of the road that the engine was setting the country on fire, and asked what he should do, and was told to go ahead. On the other hand, it appeared that a strong wind was blowing that day, the engineer thinking it the strongest he had ever run a train against. Some five witnesses, apparently experts, and competent, who examined the engine at or shortly after these fires, testified that she was in good order, and supplied with all the best appliances for preventing the escape of fire. As many testified that the engineer was a competent and careful engineer; and he testified that he took all possible precautions on that day to prevent injury

from escaping sparks. No defect in the engine was suggested by any witness; nothing pointed out as wanting to complete the most perfect arrangement for guarding against accidents or injury. There was not a syllable of testimony denying the competency and prudence of the engineer, and nothing tending to show wherein he failed of the utmost possible care upon that occasion. Upon this testimony can a finding of negligence be supported? That the evidence of the plaintiff established a *prima facie* case of negligence, will not, under the prior rulings of this court, be doubted; but it is insisted strenuously that this raises a mere presumption which may be sufficient in the absence of other testimony, but which falls to the ground when opposed by clear and positive testimony as to the actual condition and management. Presumptions may be good in the absence of testimony, but cannot overthrow it. Here all the testimony is to the effect that the engine was in good condition, and supplied with all known appliances for preventing injury. Upon what 'may a jury find that it was not in such condition, and so supplied? Who can name a thing that was wanting? Who can tell what was out of order? Is a jury at liberty to find against the only direct and positive testimony? And if so, of what avail is it to introduce testimony? And so as to the conduct of the engineer: who can name anything which he ought to have done and did not do? in what respect did he omit care? in what was he negligent? In other words, what more could the company, if possessed of all the facts it now possesses, have done to prevent the injury? What do the jury say ought or could have been done? Must not the conclusion be inevitable, that this injury was the result of accident, and not of negligence? Something which could not have been foreseen nor guarded against, and is not now known? On the other hand, it is said that all or nearly all of the witnesses for the defendant are or were in its employ, and may be presumed to be influenced to some extent thereby; that the sole witness as to the care and prudence of the engineer, is the engineer himself; the one upon whom all blame must

rest, if blame there be, and whose strong interest therefore would be to show no negligence; one too, who would be least likely to see negligence in any act of his—for it is not in human nature for one readily to perceive faults or omissions in one's own conduct; that his own testimony shows that he is not perfectly clear and accurate in all his recollections, and that a jury might properly hesitate to give the fullest credence to his statements as to his own care and conduct. More than that, the marked difference between the results that followed the passage of this engine upon this day, and those that followed its passage upon other days, and that of other engines upon the same and other days, is too great to be fairly and reasonably attributable to accident, and that too in the very judgment of the experts called by defendant. While the testimony may not show in what particular the company was guilty of negligence, yet the results of the running of the engine are clear and satisfactory evidence of negligence somewhere; and a jury was clearly justified in so finding. We have given the testimony, which is quite voluminous, a careful examination, and notwithstanding the undoubted fact that ordinarily direct and positive testimony as to actual condition and conduct is entitled to more weight than mere presumptions from results, we are compelled to hold that there is abundant testimony to uphold this verdict. We cannot be otherwise than strongly impressed with the belief that there was negligence in the running of engine No. 9 upon that day, although unable to point out the particular matter of negligence.

The suggestions already made are decisive of the second question we shall consider. In addition to the general verdict certain questions were presented to the jury, and they were instructed to answer them. Six questions were thus presented by the plaintiff, and thirty by the defendant. The six were fully and specifically answered, while some six or seven of the thirty received only the answer, "Don't know." The following are the questions thus answered:

"5th. Was said engine No. 9 in good repair on October

12th 1871, and provided with all the most approved appliances then in use for preventing injuries, by the escape of fire and sparks therefrom, to property or combustible material upon or adjacent to the line of the railroad?" *Answer—*"Don't know."

"6th. If engine No. 9 was not in good repair on October 12th 1871, and was not provided with such appliances mentioned in question No. 5, wherein was said engine out of repair, or defective, or wanting as to such appliances?" *Answer—*"Don't know."

"24th. If the fire was started from engine No. 9, how was it so started? by sparks from the stack, or in some other way?" *Answer—*"Don't know."

"25th. If by other means than sparks, what?" *Answer—*"Don't know."

"26th. If the engineer of No. 9 reduced the speed of his train to about 10 miles per hour, ran with a slow or dead fire, and with one of the dampers shut and closed all day on October 12th 1871, were these precautions all that careful management required him to take?" *Answer—*"No."

"27th. If no, what other precaution should he have taken?" *Answer—*"Don't know."

"29th. Was engine No. 9 properly and carefully managed at the time of passing the place of fire, on October 12th 1871?" *Answer—*"No."

"30th. If no, in what particular?" *Answer—*"Don't know."

Now, if a jury may properly find negligence on the part of the company, without being able to specify in what particular the negligence consisted, it follows that the only answer which sometimes they can give to a question as to negligence in a particular matter is, that they do not know. And the fact that testimony has been received as to that particular matter may not affect the propriety of the answer. In this very case, we think the jury might properly say that they were satisfied that this injury resulted from negligence, and still, after hearing defendant's witnesses in reference to the condition of the engine, and conduct of the engineer, be unable to decide whether the fault was with the engine, or the engineer. True, all the direct testimony points to an engine in good order, and suitably supplied; but the jury are not limited to this direct testimony, and upon it bound to

find the fact accordingly. Suppose, for instance, the question were as to the sanity of a party at the time of a particular act, and half a dozen experts, more or less interested, testify to his sanity: *must* a jury find a party sane, upon this, the only direct testimony upon the question, when the act itself carries upon its face the most satisfactory evidence of the actor's derangement? Or suppose one's field of grass is burned with fire from a neighbor's premises, and it appears that that neighbor was, prior to the fire, smoking a cigar, and also having a bonfire; and it is evident to the jury that by reason of distance and other facts the fire could not have been communicated without gross negligence on the neighbor's part, and yet it does not appear whether the fire was communicated by the cigar, or the bonfire: may not the jury find the neighbor guilty of negligence, and yet in response to a question as to whether the fire was communicated from the cigar, answer that they do not know? While the rule is general, that wherever a question of fact is pertinent, and an answer can be deduced from the testimony, it is the duty of the court to compel an answer, and refuse to receive a verdict until one is made, yet, where the question is not as to one of the issuable, essential, and principal facts, but runs to one of the minor and subdivided facts into which every principal fact may be resolved and reresolved almost indefinitely, and the entire testimony leaves in uncertainty the existence of several facts, including the one inquired about, either of which would be sufficient to sustain the general conclusion reached, there may be cases in which a court may properly receive and sustain a verdict where the only answer to the question is, that the jury do not know. These cases are not common, and a court should always scrutinize with great care a verdict accompanied by such answers to questions, and should never receive or sustain one when it is evident that a determination of the fact is essential to the conclusion reached in the general verdict, nor where it is apparent that the jury by improperly professing ignorance have sought to leave the

facts in such uncertainty as unduly to hinder any subsequent inquiry into the correctness of their verdict.

In reference to the instructions, we deem it unnecessary to notice them in detail. The court presented its views of the law in a charge of its own preparation, and refused to give any of the instructions asked by either side. In this charge we think the law is correctly stated, and with sufficient fullness and detail. Upon the whole case we see no error justifying a reversal, and the judgment must be affirmed.

An examination of the records in the cases of the same plaintiff in error against Joseph Rickabaugh, and against Stephen Shaw, shows that they are so nearly like the case at bar that no separate opinion is required for them, and they also will be affirmed.

All the Justices concurring.