RAFFERTY *et al.* v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Railroads**: NEGLIGENCE : VIOLATION OF ORDINANCE. In an action against a railroad company for negligently killing plaintiff's son, where the petition only charges the violation of an ordinance of the city of St. Louis, requiring the bell of the locomotive to be rung when moving within the city limits, and a man to be stationed on the end of the car farthest from the engine, when backing cars, and freight trains to be well manned by experienced brakemen when moving within the city limits, a case is not made out where the evidence shows that the injury was caused by the dropping of two box cars, without an engine attached, down an inclined track in the company's yard, where they were coupled with others standing thereon, and the coupled cars then striking another car on such track, jarring it and knocking plaintiff's son off the same, when he was killed by being run over by the trucks of the car, and fails to show that such cars were not well manned, or that the brakeman having them in charge was not experienced.

2. ——— : ——— : ———. Such box cars, when coupled to the others on the side track, did not constitute a backing train, within the meaning of the ordinance.

3. ——— : ——— : ———. Where a railroad company used a portion of the levee, with no cross streets over it, exclusively for storing and distributing cars and freight, it will be assumed that it had a right to so use it, in the absence of evidence to the contrary.

4. ——— : ——— : ———. The ordinance in question, requiring a man to be stationed on a backing train to give danger signals, does not apply where the employes are simply engaged in setting cars in a car yard.

*Appeal from St. Louis City Circuit Court.*—HON. GEO. W. LUBKE, Judge.

REVERSED.

*Bennett Pike* for appellant.

(1) The demurrer to the plaintiff's evidence should

have been sustained. *Grows v. Railroad*, 67 Me. 100; *Brooks v. Railroad*, 1 Abb. App. 211 (25 Barb. 600); *McMahan v. Railroad*, 39 Md. 438; *Lewis v. Railroad*, 38 Md. 588; *Railroad v. Moore*, 24 N. J. Law, 824; *Wilds v. Railroad*, 29 N. Y. 315; *Gahagan v. Railroad*, 1 Allen, 187; *Powell v. Railroad*, 76 Mo. 82. (2) The demurrer to the whole evidence should have been sustained. Cases cited *supra*. (3) The court erred in giving the instructions asked by plaintiffs. *Wyatt v. Railroad*, 62 Mo. 408; *Powell v. Railroad*, 76 Mo. 80; *Lenix v. Railroad*, 76 Mo. 86; *Zimmerman v. Railroad*, 71 Mo. 484; *Isabell v. Railroad*, 60 Mo. 475; *Harlan v. Railroad*, 64 Mo. 480; s. c., 65 Mo. 22; *Nelson v. Railroad*, 68 Mo. 593; *Cagney v. Railroad*, 69 Mo. 416. (4) The court committed error in refusing instructions asked by defendant. See authorities cited under third point.

*Kerr & Kerr* for respondents.

(1) Demurrer to the evidence was properly overruled. *Karle v. Railroad*, 55 Mo. 476; *Frick v. Railroad*, 75 Mo. 595; *Ibid*. 542; *Stevens v. City of Macon*, 83 Mo. 345; *Donahoe v. Railroad*, 83 Mo. 543, and cases therein cited on pages 554, 555. (2) The instructions given and considered altogether are without error, and fairly put the whole case before the jury. *Karle v. Railroad*, 55 Mo. 476; *McDermott v. Railroad*, 87 Mo. 285, and authorities therein cited.

BLACK, J.—The plaintiffs, who are husband and wife, brought this suit to recover statutory damages for the loss of their child, a boy eleven years old, who was run over and killed, by the defendant's cars, in the city of St. Louis. At the close of the evidence, the defendant prayed for an instruction in the nature of a demurrer to the evidence, which was refused, and this ruling

of the court necessitates an examination of the pleadings and the evidence. The negligence consists in the violation of an ordinance, which is pleaded, was read in evidence, and is as follows:

"Section 26. It shall not be lawful, within the limits of the city of St. Louis, for any car, cars, or locomotive, propelled by steam power, to obstruct any street crossing by standing thereon longer than five minutes, and when moving, the bell of the engine shall be constantly sounded within said limits, and if any car, cars, or locomotives, propelled by steam power, be backing within said limits, a man shall be stationed on the top of the car at the end of the train furthest from the engine to give danger signals, and no freight train shall, at any time, be moved within said limits, without it be well manned with experienced brakemen, at their posts, who shall be so stationed as to see the danger signals and hear the signals from the engine."

The petition states that the defendant's agents backed a freight train down to and against a box car, upon which the boy was standing, causing him to fall off and the trucks of the car to run over and crush his body; that the moving freight train was propelled by a steam engine, the bell of which was not constantly sounded while the engine was moving the train; that the agents of defendant backed the train on Levee street, without having a man stationed on the top of the train furthest from the engine, to give danger signals; that the train was not well manned, with experienced brakemen, at their posts so as to see and hear the signals.

The evidence shows that, from Chouteau avenue, on the north, to Convent street, on the south, the defendant has six or seven parallel tracks, next to the river bank, and on and along the levee. The space thus occupied is used for no other purpose, and is called the Chouteau avenue yard. These tracks are connected

with the ferry, and are used for the reception and distribution of cars and freight from the boats. The track nearest the river is designated number one, and is used for storing "empties." Plaintiffs' evidence tends to show that the boy was standing on the north end of a box car standing in this yard, but the witnesses differ as to whether the car was on the first, second, or third track; they agree that there were other cars standing to the north, on the same track, and detached from the one on which the boy was standing. These cars to the north, they say, ran against the one on which the boy was standing, and the witnesses saw him fall off. They say they heard no bell, and saw no man on the moving cars, but they do not give any account as to how the cars were moved, nor does it appear, from their evidence, that the moving cars were a part of any train.

The evidence for the defendant shows that the car on which the boy was standing stood on the first track. To the north, and disconnected with it, and on the same track, were several other cars. Two empty box cars, belonging to a train of four or five cars, were detached at Chouteau avenue by the engine "giving the slack." Kelley, a brakeman, got upon the two detached cars and rode them down the incline, at the same time applying the brake to keep them from going too fast. When he got within six or seven feet of the standing cars, he got down and made the coupling. These standing cars moved on and ran against the car on which the boy was standing and moved it a short space—half a car length. The fireman says he rang the bell constantly, whenever the engine moved. Plaintiffs lived within three or four blocks of these tracks, and the boy was, at the time, playing upon the car. He had previously been ordered away, but there is no evidence tending to show that the employes knew that he was about the cars at the time of the accident.

It is to be observed, the cause of action is not

based upon any alleged negligence in kicking or shunting the cars. It stands solely on the alleged violation of the ordinance. We are of the opinion that the proof does not make out a case which comes within the fair meaning of its provisions. There is no evidence tending to show that these cars, when placed in on the track, were not sufficiently manned, nor that the brakeman was inexperienced. The ordinance, among other things, does provide that, if any freight car, or cars, or locomotive, propelled by steam power, be backing, a man shall be stationed on top of the car, at the end of the train furthest from the engine, to give danger signals. To say that, when these two box cars were dropped down from Chouteau Avenue, without an engine attached, and reached the others, the whole constituted a backing train, within the meaning of the ordinance, is unreasonable. We cannot overlook the undisputed fact that this portion of the levee was used exclusively for the purpose of storing and distributing cars and freight. There were no cross streets over it to the river ; there being no evidence to the contrary, we must assume that the defendant had a right to thus use it. We held, in *Merz v. Railroad*, 88 Mo. 672, that this ordinance applied where the defendant had two parallel tracks, on unenclosed private property of the company. There can be no doubt but the company must comply with reasonable municipal regulations, as to the movement of trains on or off the streets ; still, in so far as the ordinance in question requires a man to be stationed on a backing train, to give danger signals, we hold it does not apply where the employes are simply engaged in setting cars in a car yard. The ordinance, taken as a whole, does not lead to such a conclusion. The requirement that the bell of the engine must be sounded, evidently means that it must be sounded when the car or cars are moved by the engine. Conceding that the cars, in this case, are to be regarded as moved by the engine, because first put

in motion by it; still, it did not accompany them down to their stopping-place, and the failure to ring the bell, if such was the fact, could have had no possible connection or agency in producing the injury; for, on all the evidence, it was, at least, one hundred yards off, at the time of the accident. If there was any negligence in the case, it was other than a violation of the ordinance; and the demurrer to the evidence should have been sustained.

The judgment is, therefore, reversed.    Brace, J., absent; the other judges concur.