(79 N. W. Rep. 441).

----

John McTavish *vs.* Great Northern Railway Co.

Opinion filed May 11, 1899.

**Order for Judgment—Entry in Judgment Book.**

An order for judgment duly entered in the judgment book does not constitute a judgment unless the wording be such that it expresses the final sentence of the court upon the matters contained in the record, and at once ends the case, and contemplates no further judicial action. Cameron v. Railway Co,, 8 N. D. 124, 77 N. W. Rep. 1016, distinguished.

**Entry Nunc Pro Tunc—Appeal.**

In this state, where the entry of judgment in the judgment book constitutes the judgment, and not merely the evidence of the judgment, the entry of judgment on November 28th nunc pro tunc as

of the 17th of the preceding April cannot make effective an attempted appeal from said judgment, taken during the intervening June, in the mistaken belief that there was a judgment in the case

### Negligence—Fire From Defective Engine.

When, in an action to recover damages from a railroad company occasioned by a fire which was started by one of the defendant's locomotives, the presumption of defect in the construction or equipment of such locomotive, or of negligence in its operation, which the statute raises, has been overcome by proper evidence introduced by the defendant, yet the evidence shows that the same locomotive, on the same day, and within a distance of 10 miles or less, set three different fires, it is not error to submit to the jury the question of defects in the construction or equipment of such locomotive, or negligence in its operation.

### Right of Way—Combustible Material—Negligence.

Where, in such an action, negligence is also charged in permitting combustible material to accumulate on the right of way, which was ignited by sparks or fire from the locomotive thus causing the fire which occasioned the damages, it is not necessary for the plaintiff to prove title or ownership of the locus in quo in defendant. If he shows that defendant was using the ground as a part of its right of way, that will be sufficient. The use being shown, the law will presume that the right to use has been properly acquired.

### Contributory Negligence Question for Jury.

Question of contributory negligence considered, and *held* properly submitted to the jury.

Appeal from District Court, Pierce County; *Morgan*, J.

Action by John McTavish against the Great Northern Railway Company. Judgment for plaintiff. Defendant appeals.

Affirmed.

*W. E. Dodge* and *Charles S. Albert*, for appellant.

The prima facie presumption of negligence from the setting out of the fire by defendant's engine raised by § 2984, Rev. Codes, is a disputable one and was rebutted by the facts admitted in the stipulation. *Volkman* v. *Chicago, St. P. M. & O. Ry. Co.*, 37 N. W. Rep. 731, 5 Dak. 69; *Dailey* v. *C. M. & St. P. Ry. Co.*, 43 Minn. 319; *Menominee, etc. Co.* v. *Ry. Co.*, 65 N. W. Rep. 176; *Spaulding* v. *Ry. Co.*, 33 Wis. 582; *State* v. *Hodge*, 50 N. H. 510; 2 Shearman & R. on Neg. § 676; *Carson* v. *Ry. Co.*, 29 Minn. 12; *Searles* v. *Ry. Co.*, 101 N. Y. 661; *St. L., etc. Co.* v. *Knight*, 41 S. W. Rep. 417. The evidence connecting cause and effect, in actions to recover for the negligent setting of a fire must be clear, positive and convincing. Plaintiff has the burden of showing that the fire negligently set by defendant caused his injury. *Montague* v. *Ry. Co.*, 72 N. W. Rep. 41; *Baxter* v. *Ry. Co.*, 75 N. W. Rep. 1114; *Lake Erie, etc. Ry. Co.* v. *Maron*, 47 N. E. Rep. 691; *Stratton* v. *Ry. Co.*, 42 Pac. Rep. 602; *Denver, etc. R. Co.* v. *Morton*, 35 Pac. Rep. 345; *Denver, etc. R. Co.* v. *DeGraff*, 29 Pac. Rep. 664. Plaintiff to recover must establish that there was a fire on the right of way and that it escaped therefrom. It is not sufficient merely to prove that there was fire

on the right of way. *Taylor* v. *Ry. Co.*, 34 Atl. Rep. 457. Plaintiff to recover must establish the case made in his pleadings, where the allegation is that the fire was set by sparks from a locomotive of defendant's, evidence that it was set by a fire from another field, even though occasioned by sparks from the engine will not sustain the averment. *Toledo, etc. Co.* v. *Morgan,* 72 Ill. 155; *Miller* v. *Ry. Co.,* 23 N. W. Rep. 756; *Carter* v. *Ry. Co.,* 21 N. W. Rep. 607. When a fire originates on the defendant's premises and is communicated from thence to plaintiff's premises, the complaint must allege negligence in permitting it to escape to the land of the plaintiff. The tort consists not in the defendant's setting out fire on its own premises but in permitting it to escape therefrom, and the proof cannot extend beyond the averments of the complaint. *Pittsburg Ry. Co.* v. *Culver,* 60 Ind. 969; *Omaha R. Co.* v. *Wright,* 66 N. W. Rep. 842; *Pa. Co.* v. *Gallatine,* 77 Ind. 322; *Louisville R. Co.* v. *Sperm,* 87 Ind. 322; *Louisville R. Co.* v. *Ehlert,* 87 Ind. 339; *Ind. R. Co.* v. *Adamson,* 90 Ind. 60; *Ind. R. Co.* v. *McBroom,* 91 Ind. 111; *Haugen* v. *R. Co.,* 3 S. D. 294; *Weber* v. *Ry. Co.,* 65 N. W. Rep. 93; *Northern P. Ry. Co.* v. *Burke,* 44 Pac. Rep. 904. The primary cause must be the proximate cause of the injury. If because of the fire on the right of way, other persons were prompted to set out back fires for the protection of their property defendant is not liable for injuries caused by the back fires. *Marvin* v. *Ry. Co.,* 47 N. W. Rep. 1123; *Cook* v. *Ry Co.,* 14 N. W. Rep. 561; *Megon* v. *Ry. Co.,* 56 N. W. Rep. 1009; *Keslowski* v. *Thayer,* 66 Minn. 150. Where, as in this case, the court gave an erroneous instruction in regard to a vital issue and erroneously submitted an issue which ought to have been withheld from the jury, the error is vital. *Leitch* v. *Ry. Co.,* 67 N. W. Rep. 21; *Funk* v. *Ry. Co.,* 61 Minn. 441; *VanDoran* v. *Wright,* 65 Minn. 80; *Hill* v. *Trainor,* 49 Wis. 537; *Heddler* v. *Ry. Co.,* 42 N. W. Rep. 237. The instruction that defendant was bound to use the best known appliances to prevent the escape of fire was error. It imposed too high a degree of care upon defendant. *Paris, etc. Ry. Co.* v. *Nesbett,* 33 S. W. Rep. 280. The order of the District Court directing judgment to enter was not a judgment in fact or in legal effect and its entry by the clerk did not make it a judgment so as to give this Court jurisdiction on the former appeal. In re Weber, 4 N. D. 119, 59 N. W. Rep. 523; *Locke* v. *Hubbard,* 9 S. D. 364, 69 N. W. Rep. 588; *Field* v. *Elev. Co.,* 5 N. D. 400, 67 N. W. Rep. 147; *Greenly* v. *Hopkins,* 7 S. D. 561, 64 N. W. Rep. 1128; *Chamberlain* v. *Hedges,* 10 S. D. 290, 73 N. W. Rep. 75; *Coburn* v. *Commis'r's,* 10 S. D. 552, 74 N. W. Rep. 1026; 1 Black on Judgments, §3; *Whitwell* v. *Emory,* 3 Mich. 84, 54 Am. Dec. 220; *Putnam* v. *Crombie,* 34 Barb. 232; *Demens* v. *Poyntz,* 6 So. Rep. 261. The entry of judgment by the clerk is a prerequisite to the right of appeal from the judgment. *Los Angeles Bank* v. *Raynor,* 61 Cal. 145; 1 Black on Judgments, § 106. A judgment is rendered when ordered by the court and entered when actually entered in the

judgment book. The entry of an order for judgment is not the entry of judgment. *Durant* v. *Comegys,* 26 Pac. Rep. 755; *Lincoln* v. *Cross,* 11 Wis. 94; *McNevin* v. *McNevin,* 11 Pac. Coast L. Jr. 92; *Martin* v. *Barnhardt,* 39 Ill. 9; Haynes New Trials 183, n. 6; *Park* v. *Lide,* 7 So. Rep. 805; *Thomas* v. *Anderson,* 55 Cal. 43; *Schroeder* v. *Schmidt,* 12 Pac. Rep. 302; *Tyrell* v. *Baldwin,* 13 Pac. Rep. 475; *Morgan* v. *Flexner,* 16 So. Rep. 716; *Brown* v. *Hathaway,* 10 Minn. 303; *Williams* v. *McGrade,* 13 Minn. 46; *Hodgins* v. *Heaney,* 15 Minn. 185; *Hoehne* v. *Trugillo,* 1 Colo. 161; *Hunter* v. *Cleveland,* 31 Minn. 505; *Myer* v. *Tentopolis,* 131 Ill. 552; *Premt* v. *People,* 5 Neb. 377. The decision should be signed by the judge and the judgment by the clerk. *Delaney* v. *Blizzard,* 7 Hun. 66; *Rousseau* v. *Bleau,* 8 N. Y. Supp. 825.

*N. A. Stewart* (*Bosard & Bosard,* of counsel), for respondent.

The judgment was irregular in form, but it was sufficient in substance as it contained the final judicial determination of the action. It was duly entered, and finally determined the controversy. *Cameron* v. *G. N. Ry. Co.,* 8 N. D. 124, 77 N. W. Rep. 1017; Freeman on Judgements, § § 47-50. Where judgment has been rendered but not entered, it may be entered nunc pro tunc, and such entry will support intermediate proceedings conformable with judgment. *Graham* v. *Lynn,* 39 Am. Dec. 493; *Todd* v. *Todd,* 63 N. W. Rep. 777; *Jones* v. *Lewis,* 47 Am. Dec. 338; *Davis* v. *Shaver,* 91 Am. Dec. 92; *Tapley* v. *Goodsell,* 122 Mass. 176. The entry of judgment nunc pro tunc is always proper when a judgment has been ordered by the court but the clerk has failed to copy it into the record. *Howell* v. *Morlan,* 78 Ill. 162; *Franklin* v. *Merida,* 50 Cal. 289; *Hansbrough* v. *Fudge,* 80 Mo. 307; *Belkin* v. *Rhodes,* 76 Mo. 643; *Aydelette* v. *Brittam,* 29 Kan. 98. Where fire has been negligently communicated to property and by subsequent agencies it is carried to other properties the party first setting out the fire will be held liable. *Poeppers* v. *Ry. Co.,* 67 Mo. 715; *Coates* v. *Ry Co.,* 61 Mo. 38; *Krippner* v. *Biebl,* 28 Minn. 139; *Atkinson* v. *Transportation Co.,* 60 Wis. 141; *Milwaukee, etc. Ry. Co.* v. *Kellogg,* 94 U. S. 169; *Henry* v. *Ry. Co.,* 50 Cal. 183. The proximate cause of damage by fire carried from one building to another through intermediate means is a question for the jury. *Adams* v. *Young,* 44 Ohio St. 80.

BARTHOLOMEW, C. J. Some questions of practice meet us on the threshold of this case, raised by respondent's motion to dismiss the appeal. The case has already been once in this Court. See 8 N. D. 94, 76 N. W. Rep. 985. At that time a motion was made by respondent to strike the statement and abstract from the files for certain alleged defects, which motion was sustained. Thereupon both parties moved to dismiss the appeal; respondent with prejudice, and appellant without prejudice. An order of this Court was entered dismissing the appeal with prejudice, unless within a specified time appellant should pay respondent a sum named to

cover the expenses of the appeal. Appellant declined to pay such sum, and the order of dismissal was made absolute. It now transpires that counsel for the appellant declined to pay the sum specified in the former order because, upon an inspection of the records in the trial court, he reached the conclusion that no judgment had éver been entered in the case, and consequently the former appeal had been prematurely taken, and the case was not properly in this Court. After the remittitur was sent down, counsel procured the entry of what he regarded as a regular judgment upon the order for judgment previously made by the District Court, and from such judgment he prosecutes this appeal. This judgment concededly includes respondent's taxable costs on the former appeal, in addition to the amount of the judgment originally ordered by the District Court. After the remittitur was sent down, counsel for the respondent procured an order directing the clerk of the District Court to enter the judgment in the case, nunc pro tunc, as of the date of the original order for judgment, which was done, and a regular judgment of affirmance was also entered on the remittitur.

Counsel for the respondent now move to dismiss this appeal, and as the first ground for the motion insist that there was a valid judgment at the time of the former appeal, and that the dismissal of that appeal affirmed the judgment, and hence this matter is res adjudicata. Counsel's conclusion is conceded if the major premise be correct. The records show that on the 27th day of April, 1898, an order for judgment was made and signed by the judge of the District Court, which, after the usual formal parts, declares: "And the court, overruling the defendant's motion for a new trial, made on the 17th day of March, 1898, orders that the plaintiff have and recover judgment against the defendant for the sum of two thousand six hundred and eighty-eight and 85-100 (2,688.85) dollars damages, and interest thereon from and after the 18th day of June, 1897, and ten dollars costs; and the clerk of the District Court is hereby ordered to render judgment accordingly." This order was, on the 11th day of May, 1898, entered by the clerk of the District Court in his judgment book, and thereafter, and on June 4, 1898, the former appeal was taken, the notice of appeal stating that the appeal was "from the judgment of the District Court entered herein on the 11th day of May, 1898." It will be seen that the precise question for determination is whether or not this order for judgment, when duly entered in the judgment book, constitutes a valid judgment, or is it so entirely void that it must be wholly disregarded as a judgment? This Court has held that there can be no effective judgment in this state until it is entered in the judgment book. In re Weber, 4 N. D. 119, 59 N. W. Rep. 523. In that case it was held that an order made in a case appealed from Justice Court, and which ordered "that said appeal be, and the same is hereby dismissed," and which was entered in full in the order book, was neither a judgment nor a final order. But the court expressly

refrained from expressing an opinion as to what it would have been had it been entered in the judgment book. This case was followed, and the principle reaffirmed, in *Field* v. *Elevator Co.,* 5 N. D. 400, 67 N. W. Rep. 147. But in *Cameron* v. *Railway Co.,* 8 N. D. 124, 77 N. W. Rep. 1016, we had a case where, in response to a motion to dismiss, an order was made and signed which declared, inter alia: "Which motion, after being duly considered by the court, is allowed, and the plaintiff's action is hereby dismissed. Done in open court," etc. This order was entered in the judgment book, and we held that it constituted a final judgment. In that case some stress was laid upon the fact that the notice of appeal referred to it as a judgment, but the same fact exists in this case. In that case the Court said: "The question is therefore presented whether this constitutes a judgment within the meaning of the law. We are constrained to hold that it does. It embraces the disposition made of the case by the court below, and that disposition is incorporated in the judgment book. The language of the judgment is, 'The plaintiff's action is hereby dismissed.' This is explicit, and is found written in the judgment book kept in the office of the clerk of the District Court." Is the point before us ruled by this case? We think not. The distinction may be fine, but it is substantial. We must by no means confound an order for judgment with the judgment proper. The former is a writing signed by the judge, particularly indicating the terms of the judgment which the law pronounces upon the matter before the court. The latter is the formal judgment of the court, entered by its ministerial officer in the judgment book. Now, it may readily be conceived that language may be used in the order signed by the judge which is in all its formal parts sufficient to constitute a judgment, yet, unless entered in the judgment book, it has no such effect. Such was the Weber case. But, if the language of the order be all sufficient to constitute a judgment, such language will, when written out in the judgment book, necessarily be a judgment; and the fact that the same language appeared in the order cannot affect the case in the least. Such was the Cameron case. It is not every order that might be entered in the judgment book that would constitute a judgment. Necessarily, we must look to the substance, and not to the form. Ordinarily, the substance of an order for judgment will not constitute a judgment. In Black, Judgm. § 115, it is said: "A true judgment must be distinguished from a mere order or direction or permission to the clerk to enter a judgment. A document of the latter kind has not the force or characteristics of a judgment, and will not support an execution." A judgment is the final sentence of the law upon the matter contained in the record. It ends the case, and leaves no further judicial act to be performed. A glance at the order in this case shows that it did not purport to be the final act in the case. It, in terms, ordered the clerk to enter judgment, which as stated, is the act of the court by its ministerial officer. It contemplated further judicial action. Again, a money judgment for plaintiff

should always adjudge or order that plaintiff do have and recover the specified amount of money. This document does not order or adjudge the recovery of any sum of money whatever. It simply orders that plaintiff do have and recover a judgment for a specified amount; in other words, it orders that plaintiff have a judgment which shall adjudge that he recover the specified amount of money. No more apt words could have been used in ordering a judgment. Reading this entire document as a whole, we are clear that it lacks the substance of a final judgment.

The second reason assigned for dismissing this appeal is the fact that the judgment appealed from was entered pursuant to the original order for judgment made by the District Court, but includes respondent's costs on the former appeal to this Court. This ground for the motion is not argued in counsel's printed brief or orally, and hence is waived, and we mention it only to say that, whatever may be the disposition of this case upon this appeal, appellant is liable absolutely for the costs upon the former appeal. The judgment of affirmance which respondent caused to be entered upon the remittitur is a valid judgment, so far as said costs are concerned; but, as it purported to affirm a judgment which it now transpires never existed, it is otherwise a nullity.

Respondent also urges as a ground for dismissing the appeal that the entry of the judgment after the remittitur went down, and on the order of the court procured November 28, 1898, nunc pro tunc, as of the date of the original order for judgment, cured any defect that might have theretofore existed, and created a judgment valid from the date of the original order, and for that reason the matter here involved is res adjudicata. A large citation of cases is presented supporting this view, and counsel, in their brief, say: "The entry of a formal judgment nuc pro tunc, where the clerk has neglected to enter the same properly, after appeal from the judgment actually rendered and supposed to be entered, covers the defect. * * * The authority of the clerk to make this formal entry is founded on a judgment already valid, and whose validity is not destroyed by his failure to enter it." This language of the learned counsel develops the principle upon which the cases that support their position is based. In many jurisdictions a judgment is rendered the moment the court, orally or otherwise, announces its definite and final determination. That announcement is the judgment. The formal entry is but the evidence of that judgment, and, of course, the formal evidence of that which exists in equal force and validity without such evidence can be entered as of any date that does not antedate the fact. In this state there is no distinction between the rendition and the entry of judgment. In re Weber, supra. The entry in the judgment book is not only the evidence of the judgment, but it is the judgment, and there can be no other valid judgment in any case. The authorities cited by counsel are not applicable here. The motion to dismiss is denied.

This action was brought to recover damages caused by a prairie

fire, which it is claimed was started by the negligence of the de-
fendant. Damages are claimed for loss of certain property, but
principally by reason of physical injuries, and sufferings, and ex--
penses caused by being burned. The complaint alleges negligence
in the equipment and operation of the engine, and also in permitting
dry and combustible material to accumulate and remain upon the
right of way, and in permitting the fire to escape from such right of
way. The injury occurred on the 23d day of October, 1895, near the
branch line of defendant's road running north, and a little west,
from Rugby to Bottineau. Leaving Rugby, the first station north
is Barton, the second Willow City, and the third Omemee. On said
October 23d a train was being run over such branch road coming
south. Soon after leaving Barton, and when between Barton and
Rugby, just as the train was passing, a fire started on the east side
of the track in the grass, which the section foreman on that section
testifies was from one to three feet high, and very dry and com-
bustible. The witness who was nearest the fire when it started says
it started about 30 feet from the track. There was a very strong
wind at the time blowing from the west,—perhaps a little north of
west. There was a road or trail running along the east side of
the railroad track, and at a distance varying from 100 to 150 feet
therefrom. There was not then, and never had been any fire break
along the east line of the right of way. With the velocity acquired
by the fire in running with the wind, the road seems to have pre-
sented no obstacle to its advance. It swept across the road, and
continued east over what appears to have been unbroken prairie
ground. This was about 2 o'clock in the afternoon. About two or
two and a half miles almost directly east from the point where the
fire started the plaintiff and one Young had stopped, and put up
a tent. Why they were there does not appear further than that
Young testifies, "We pulled in there to feed our stock and feed
ourselves." The horses had been unhitched and cared for, and
soon thereafter, and while plaintiff was preparing something to
eat, Young remarked that it looked like a prairie fire down towards
the railroad. Just west of the tent, and running partially around
it in a semicircle, was a low strip of ground, in which there was
shallow water. The ground was covered with rank grass, which
was dry above the water. On the west side of this low ground, and
15 or 20 feet therefrom, was a trail running north and south. A
short distance north of the tent—the best evidence puts it about 15
rods—was a house, standing on an elevation, and in which was
stored some grain belonging to one Cruden. In a very short time
Cruden appeared on the scene with a team (five horses) and a
plow for the purpose of plowing a firebreak to protect his grain from
the approaching fire. Young at once went to help him, and three
narrow strips were broken up west of the trail, commencing at a
point south of the tent, and extending to a point north of the
house. Meantime the advancing line of the fire had passed the house
on the north, and moved on east. Other parties had also arrived

to aid in saving the house and grain, and they were endeavoring to set back fires to prevent the south line of the fire that was necessarily left by the advancing flames from working south onto the house and tent. The fire was getting so near, and the smoke so dense, that Cruden deemed it prudent to get his horses on the high ground near the house, where, the evidence shows, the grass was short, making the spot much safer. Just what the plaintiff was doing all this time is not entirely clear. The testimony shows that it must have been more than 30 minutes from the time they discovered the fire until plaintiff was injured, but when the first real danger appeared is not shown. It seems that when they began the plowing plaintiff watched them for some time. He then, with the aid of a pot, scooped out a hole where the water was, and got some water, and an empty sack that he wet, evidently for the purpose of fighting fire. He then stood for some time on the trail, watching the plowing. He then took the pot, and went to the water hole for more water, but as he stooped to get it the dense smoke and fire came down upon him in such a manner that he deemed his only chance of saving his life was to rush through the fire, which he did, but was badly burned in so doing. Plaintiff was 64 years old. He says he had ample time to go up to the house, or to go upon the breaking. The general situation as to danger may be understood from the language of another witness, who was in that immediate vicinity. He says: "Everybody was to look out for himself in a fire of that kind, and that was the way I figured it. I know I had all I could do to take care of myself. I came out all right." The evidence shows that the fire, when it struck the furrows, was coming almost directly from the west.

The questions of negligence and contributory negligence that so often arise in cases of this character were sharply litigated on the trial, and are presented on this appeal. Our statute (section 2984, Rev. Codes) relieves a plaintiff in actions of this character, when it appears that a fire was set by fire escaping from an engine, of the burden of showing defects in the construction or equipment of the engine, or negligence on the part of the employes. Setting the fire is made presumptive evidence of such defects or negligence. But this Court is fully committed to the principle that whether or not such statutory presumption is overcome by evidence introduced by the defendant is, in the first instance, a question of law for the Court. *Smith* v. *Railroad Co.,* 3 N. D. 17, 53 N. W. Rep. 173. And also to the further position that when the proper employes of the defendant railroad company have gone upon the stand, and testified that there were no defects in the construction or equipment of the engine, and no negligence in its operation, making their testimony at all points as broad as the presumption, then, as matter of law, such presumption is overcome. Evidence of that character was introduced by the defendant in this case. The trial court fully understood the rules of law as announced in the Smith case, supra. Nevertheless, the question of negligence in the construction, equip-

ment, and operation of the engine was left to the jury in this case upon the theory that plaintiff had not rested simply upon the statutory presumption, but had introduced affirmative testimony to show such negligence. Such testimony, it was claimed, was found in the fact that this same engine, on this same day and trip, set three different fires within a distance of 8 or 10 miles. Appellant argues that such facts cannot be received in this jurisdiction as evidence of negligence, because in the Smith case this Court said, "That locomotives in operation do emit sparks which set fires is a matter of common knowledge." That was, perhaps, an inadvertent remark, and was not necessary to the decision of the case, but, as applied to the facts of that case, it did no harm. Our statute, raising a presumption of negligence from the mere fact of setting the fire, was not then in force, and the Court was discussing the rule established by the decisions. Just preceding the quoted words the Court said, "We do not think that an inference of negligence naturally arises from the mere fact that a single fire has been started by a passing engine." Again, in that same case, it was said, "We therefore establish it as the rule in this state that the Court must, in the first instance, determine the question whether the inference of negligence arising from the mere setting out of a single fire has been fully overcome." A reading of the entire opinion will show that the Court was careful to limit the rule to cases of a single fire. We have not heretofore had ocassion to consider what presumption of negligence, if any, arises from setting repeated fires. But, if setting a single fire raises a presumption of defect in construction or equipment of the locomotive, or negligence in its operation, certainly setting repeated fires on the same day by the same locomotive makes that presumption very much stronger; and while, as we have seen, the courts have arbitrarily declared (though not very logically, in the opinion of the writer hereof) what quantum of proof would, as matter of law, overcome the presumption arising from setting a single fire, yet no court has ever presumed to make any such arbitrary declaration in cases of repeated fires. As early as the case of *Huyett* v. *Railroad Co.,* 23 Pa. St. 373, the Court said: "How is it possible for the Court to say, as matter of law, how many sparks, or how many fires caused by them, it takes to prove carelessness? * * * How can we say that the happening of several fires, all about the same time, along the line of the road, is no evidence of carelessness?" In *Railway Co.* v. *Kincaid,* 29 Kan. 654, the opinion was by Brewer, J., and approved a charge of the trial court to the effect that a single fire did not of itself prove negligence, but that from the occurrence of a series of fires of a similar nature at or about the same time, when an engine in good order, and properly handled, did not ordinarily start such fires, the jury might infer negligence. In *Henry* v. *Railroad Co.,* 50 Cal. 176, it is said: "We think there was no error in permitting proof that, prior and subsequent to the fire which produced the injury complained of, other fires were kindled by defendant's engine. The evidence was con-

fined to fires caused by the same engine in the same vicinity, and about the same time. \* \* \* We think the evidence objected to tended to prove that the fire in question was caused by sparks from the engine, and also that there was something wrong in the management, or defective in the construction, of the engine.". And see, also, *Crist* v. *Railway Co.,* 58 N. Y. 638; *Railroad Co.* v. *Schultz,* 93 Pa. St. 341; *Railroad Co.* v. *Stanford,* 12 Kan. 354; *Railroad Co* v. *Campbell,* 16 Kan. 200; *Railroad Co.* v. *Grantt,* 39 Md. 115; *Longabaugh* v. *Railroad Co.,* 9 Nev. 271. There is abundance of authority for the action of the court in submitting this branch of negligence to the jury in this case.

It is also urged that there was error in submitting the question of negligence on the part of the defendant in permitting combustible matters to accumulate upon its right of way, for the reason, as it is claimed, that there was no evidence whatever that the defendant owned any right of way at this point. This assignment cannot be sustained. That defendant owned and operated this line of road is undisputed. We cannot conceive of the existence of a railroad without some accompanying right of way. The evidence tends strongly to show that when this line of road was constructed the tract of land whereon this fire started was government land. It was taken up as a homestead some years thereafter. The statute of the United States (Act Cong. March 3, 1875; 18 Stat. 482) gave the defendant the right to claim a right of way over public lands 200 feet in width. It might not be unreasonable to presume that defendant had availed itself of this right. But this was not a question of dispute over title. Ownership was not involved. In *Gram* v. *Railroad Co.,* 1 N. D. 259, 46 N. W. Rep. 974, this Court said: "The practical question was and is whether, at the time the fire was thrown out by defendant's train, it fell upon and ignited dry grass standing upon right of way then in use as such by the defendant. It is, moreover, perfectly clear to this Court that defendant's liability for the alleged negligence does not at all depend either upon its ownership or its right to the possession of the strip of land upon which the fire originated. If, at that time, the defendant was actually using the land for its right of way purposes, it would be none the less liable, if it was a mere trespasser upon such land." In this case the man who was then section foreman on this section of the road was a witness in the case, and he testified that on the day of this fire he was engaged in burning the grass off from the right of way on the east side of the track. This he did by starting a fire along the edge of the wagon road, which we have seen ran parallel with the railroad track at a distance of 100 feet or more from the track, and permitting it to work back against the wind to the track, and he had reached a point in this work about a quarter of a mile distant from where the fire started. This shows that the defendant was using, as right of way a strip 100 feet in width on the east side of the track. The duties of this witness made it incumbent upon him to know what ground was being used as right of way. He says the fire started upon the right of way.

That declaration would be incompetent to show title, but it was competent as showing what he had been instructed to burn off as right of way. We think this evidence, standing uncontradicted, warranted the jury in finding that the fire started on ground used by the defendant as right of way, and, the fact of user, being once established, the law will presume that the right to so use the ground has been properly acquired. *Glass* v. *Railroad Co.,* 94 Ala. 581, 10 So. Rep. 215; *Rafferty* v. *Railway Co.,* 91 Mo. 33, 3 S. W. Rep. 393.

It is urged that the evidence fails to establish any connection between the fire started by the defendant's engine and the fire that injured plaintiff. This contention tortures the evidence. The fire was set, and at once started, before a high wind, in the direction of the house where Cruden's grain was stored. It was never checked or stopped. Parties in the neighborhood, knowing that the grain was in danger, hurried to save it. The fire had passed the house to the north before some of them reached the place. It was in plain view all the time. It would be a mere idle waste of time in such a case to go to the railroad, and trace the track of the fire, to see that it was continuous. There can be no pretense of more than one fire except that an effort was made to back fire. But this back firing was all north or west of the house, and not west of the tent, while the fire that did the damage came almost directly from the west. No witness claims that the injury was caused by the back fires, while the evidence of Mr. Cruden for the plaintiff and Mr. Burns for the defendant make it reasonably certain that it was the main fire that did the damage. The jury was not left to conjecture.

The question of plaintiff's contributory negligence was properly left to the jury. From looking at the circumstances after the injury has occurred, it is easy, as it usually is, to see how it might have been avoided. But it cannot be said as matter of law that plaintiff did not act as an ordinarily cautious and prudent man would have acted under the same circumstances. Around the house the grass was shorter, and 'the position safer, and plaintiff had plenty of time to reach the house after he saw the fire coming. But, so far as the evidence bears upon the subject, it tends to show that plaintiff knew nothing of the local conditions. He and his companion, Young, were passing over the road with teams and a wagon and tent. They stopped to let the horses feed, and get something to eat themselves. They had but just stopped, when the fire was seen. Plaintiff remained in the immediate vicinity of the tent until he was injured. There is nothing to show that he knew, or had any reason to believe, that it was safer up near the house than where he was. That Cruden and those familiar with the location may have known that fact is no proof that plaintiff knew it. Nor can we say, as a matter of law, that an ordinarily cautious man may not have believed that the fire breaks that we have described would be a sufficient protection to him. This disposes of all the assignments argued by appellant in its brief or orally. We find no error, and the judgment of the District Court is affirmed. All concur.