CRISWELL v. NOBLE et al.

(Supreme Court, Special Term, Niagara County. December 19, 1908.)

1. ALIENS (§ 12*)—DISABILITIES—REAL PROPERTY.
    Under Laws 1845, p. 94, c. 115, entitled "An act to enable resident aliens to hold and convey real estate and for other purposes," neither resident or nonresident aliens could inherit from resident citizens.
    [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 35–38; Dec. Dig. § 12.*]

2. ESCHEAT (§ 3*)—PROPERTY OF ALIENS.
    Where an owner of real estate died while Laws 1845, p. 94, c. 115, was in force, leaving a widow and only alien heirs, his real property escheated to the state, subject to the dower of the widow.
    [Ed. Note.—For other cases, see Escheat, Cent. Dig. § 3; Dec. Dig. § 3.*]

3. ALIENS (§ 12*)—DISABILITIES—REAL PROPERTY—STATUTORY RESTRICTIONS.
    Laws 1874, p. 317, c. 261, amending Laws 1845, p. 94, c. 115, entitled "An act to enable aliens to hold and convey real estate and for other purposes," which extended the right of alien heirs to inherit, so as to vest the title of the estate in escheated premises in the alien nephews and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nieces of an intestate alien, is retroactive in its effect, so as to permit alien heirs of one dying before its passage to inherit.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 42; Dec. Dig. § 12.*]

4. CITIZENS (§ 7*)—NATURALIZATION—WIFE OF ALIEN.

A wife becomes a citizen of the United States when her husband is naturalized, and has the right to take and hold real estate.

[Ed. Note.—For other cases, see Citizens, Cent. Dig. § 6; Dec. Dig. § 7.*]

5. ADVERSE POSSESSION (§ 71*)—HOSTILE CHARACTER OF POSSESSION—COLOR OF TITLE.

A deed, though actually conveying nothing, may be sufficient on which to found a tangible successful claim of adverse possession, if such possession continues sufficiently long to ripen into an absolute title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 417; Dec. Dig. § 71.*]

6. ADVERSE POSSESSION (§ 62*) — HOSTILE CHARACTER—POSSESSION BY WIDOW AGAINST HEIRS.

A widow in possession, with no muniment of title, may acquire a title by prescription adverse to the heirs, if her occupancy is open, notorious, visible, and by acts unequivocally conveying to the heirs the information that she is holding in defiance of their title, instead of in subordination to them.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 62.*]

7. ADVERSE POSSESSION (§ 70*) — HOSTILE CHARACTER OF POSSESSION — SUFFICIENCY OF TITLE.

Plaintiff's husband died intestate, and his property escheated to the state, and a special law was subsequently passed giving the property to plaintiff. She had a certified copy of the act recorded as a deed in the county clerk's office, and remained in possession of the place continuously thereafter for the statutory period, leasing it, collecting the rent, living on it, keeping it in repair, improving it, and paying the taxes thereon. *Held* that, under Code Civ. Proc. §§ 369–372, specifying what acts will give title to property by adverse possession, plaintiff acquired the title by adverse possession, which was not defeated by a clause in the act giving her the property, specifying that nothing in the act should be construed as to affect the right of any heir, nor by a request to one of the heirs, made before the passage of the acts giving her the property, requesting him not to interfere with her, to which request the heir replied that he would not so long as she lived.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 70.*]

8. ADVERSE POSSESSION (§ 68*)—REQUISITES—CONTINUITY OF POSSESSION—RECOGNITION OF ADVERSE TITLE.

Although any acknowledgment by the occupant that he claims no title will prevent him from obtaining title by adverse possession, if the occupant changes the character of his possession, and with the knowledge of the owner sets up a new claim of title on a new foundation, his title will not be defeated by his former acknowledgment.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 68.*]

9. ADVERSE POSSESSION (§ 112*)—CHARACTER OF POSSESSION—EVIDENCE.

Possession, accompanied by the usual acts of ownership, is presumed to be adverse until shown to be subservient to the title of another.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 656; Dec. Dig. § 112.*]

Action by Ann Criswell against Silas Noble and others. Judgment for plaintiff.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Judson & Holley, for plaintiff.
John H. Leggett, for defendants.

POUND, J. This is a controversy, under the provisions of Code Civ. Proc. §§ 1638–1650, between the plaintiff, who is the widow of John Noble, deceased, and the defendants, who are the nephews and their wives and the nieces of said Noble, over the title to about 10¼ acres of real property, with house, barn, and farm buildings, situate in the town of Lockport, Niagara county, N. Y. John Noble died intestate in the town of Lockport, March 6, 1874. He was a naturalized citizen of the United States, having become such in the year 1870, and was, at the time of his death, seised in fee and possessed of said real property. He left surviving him his widow, now 89 years of age, three alien nephews, and three alien nieces, answering to the description of his heirs at law, all of whom are now living. The nephews were, at the time of his death, residents of the United States. The defendant Silas Noble became a naturalized citizen on the 24th day of October, 1874. The defendants Obed and Jesse Noble have since become naturalized citizens. The nieces are residents of England and have never been in the United States. The plaintiff afterwards married one Criswell, whose widow she now is.

Aliens, resident or nonresident, could not inherit from resident citizens under the provisions of chapter 115, p. 94, of the Laws of 1845, entitled "An act to enable resident aliens to hold and convey real estate, and for other purposes," which was the statute on the subject of alien inheritance in force at the time of the death of John Noble. Luhrs v. Eimer, 80 N. Y. 171. The premises in question, upon the death of John Noble, therefore, escheated to the state of New York, subject to plaintiff's claim of dower therein.

On April 27, 1874, about six weeks after John Noble's death, chapter 261, p. 317, of the Laws of 1874, amending the above act of 1845, became operative. This act, which was afterwards held to be retroactive in effect, so extended the right of alien heirs to inherit as to vest the title of the state in the premises in the nephews and nieces. Wainwright v. Low, 132 N. Y. 313, 30 N. E. 747; Smith v. Smith, 70 App. Div. 286, 74 N. Y. Supp. 967. The following year, through the efforts of an attorney at law employed by plaintiff, chapter 121, p. 105, of the Laws of 1875, was enacted. It reads as follows:

"An act to enable Ann Noble to take and hold real estate, and to release to her the interest and title in lands escheated to the state.

"Passed April 17, 1875, by a two-thirds vote.

"The people of the state of New York, represented in Senate and Assembly, do enact as follows:

"Section 1. Ann Noble, of Lockport, New York, is hereby authorized to take, hold and dispose of her dower and any interest in the real estate in the town of Lockport, county of Niagara, whereof her husband, John Noble, died seized, or was the legal or equitable owner at the time of his death, and particularly all that real estate in the town of Lockport aforesaid described in a certain deed of conveyance, bearing date the twenty-second day of April, eighteen hundred and sixty-four, and recorded in Niagara county clerk's office in book of deeds number ninety-seven, at page five hundred and twenty-eight, executed by Roderick N. Williams and wife to said John Noble, containing ten and one-quarter acres of land, more or less, reference being had to said deed, or the

record thereof; and all the property, interest and title of the said John Noble, who was then a resident of the said place, which the people of the state of New York acquired by escheat at his death, or which they may hereafter acquire by reason of alienage of, or to any of said real estate, are hereby assigned and released to and vested in the said Ann Noble, widow of said John Noble, deceased, and her heirs and assigns forever, to take, hold and dispose of the same in all respects the same as if she were a citizen of the United States.

"Sec. 2. Nothing in this act contained shall be so construed as to affect the right of any heir, devisee or purchaser, or of any creditor by mortgage or judgment, or otherwise, relating to said real estate.

"Sec. 3. This act shall take effect immediately."

That plaintiff honestly believed that she acquired a good title to the premises under this act is apparent from all the facts in the case. It would seem that she was advised that neither she nor the heirs could take and hold title to the property by reason of alienage, but that the state could release to her all of her husband's estate therein. Else why the escheat act? Yet she had become a citizen of the United States when her husband was naturalized, and so had the right to take and hold real estate. Luhrs v. Eimer, 80 N. Y. 171. And the state had already, by the general act, released to the nephews and nieces of John Noble all its interest in the premises acquired at his death by escheat. Wainwright v. Low, supra.

But a deed, even though actually conveying nothing, may be sufficient to found a tangible successful claim of adverse possession on, if such possession continue sufficiently long to ripen into an absolute title. Tarplee v. Sonn, 109 App. Div. 241, 244, 96 N. Y. Supp. 6. And it is well settled that the widow in possession, even with no muniment of title, may acquire a title by prescription, adverse to the heirs, if her occupancy is open, notorious, visible, and by acts unequivocally conveying to the heirs the information that she is holding in defiance of their title, instead of in subordination to them. Zapf v. Carter, 70 App. Div. 395, 75 N. Y. Supp. 197.

The acts performed by plaintiff were such as any owner would perform. She had a certified copy of her escheat act recorded in the Niagara county clerk's office "as a deed," remained in possession of the place continuously thereafter, leased it and collected the rent for some years, lived on it for the past 19 years, kept the property in repair, improved it, and paid the taxes. She has acquired a title by adverse possession, unless the saving clause for the benefit of heirs, contained in the escheat act, or some recognition by her of the superior rights of the heirs, defeats such title. Code Civ. Proc. §§ 369–372.

In Fowler v. Manheimer, 70 App. Div. 56, 75 N. Y. Supp. 17, affirmed 178 N. Y. 581, 70 N. E. 1098, the court says:

"But it is said that the plaintiff acquired title by adverse possession. This cannot be because the only interest which Jane Ferguson acquired was by virtue of the act of the Legislature [an escheat act] which expressly provided that her interest must be held subject to any right of heirs at law."

That case is distinguishable, and is not authority for the proposition that title by adverse possession cannot be acquired under plaintiff's escheat act. There the action was brought to compel specific performance of a contract for the sale of real estate; the defendant having

refused to perform on the ground that the title was unmarketable. Plaintiff failed to negative the possibility of heirs capable of inheriting. Here the heirs are before the court, and the subject-matter of the litigation is the title of the lands as between the widow and the heirs. Moreover, that escheat act differs materially from the ordinary statute releasing the rights of the state in lands where an escheat is claimed. It expressly provides that the widow shall hold the land under such release, "subject to any right, claim or interest of any * * * heir at law * * * in the said real estate." The act of 1875, on which plaintiff relies, contains no such proviso. While it does not "affect the right of any heir," it does not go so far as to subordinate for all time to the rights of heirs the holding under said act. The taking is not "subject to" the rights of heirs, and therefore the holding may become adverse. The saving clause merely reiterates negatively the terms of the grant. Out of abundant precaution, the Legislature repeats in different terms the idea that the act is a mere release on the part of the state, without any suggestion of a claim of title in the state. But to plaintiff the act meant something tangible, and became the basis of a claim of title against the heirs, because, according to her understanding, there were no heirs, and the state held her husband's title to the premises.

It is urged that plaintiff has expressly recognized the rights of the heirs as superior to hers, and that therefore she cannot acquire title by adverse possession as against them. "It is well known that a single lisp of acknowledgment by [the occupant] that he claims no title fastens a character upon his possession which makes it unavailable for ages." Colvin v. Burnet, 17 Wend. 564, 569; De Lancey v. Hawkins, 23 App. Div. 8, 14, 49 N. Y. Supp. 469. But if the occupant thereafter changes the character of his possession, and with the knowledge of the owner sets up a new claim of title on a new foundation, his holding may again become adverse. 1 Cyc. 1033.

The only dealings that plaintiff had with the heirs were through the defendant Silas Noble, who lived in Niagara county, was familiar with the premises, and saw plaintiff frequently after the death of John Noble, both before and after the passage of the escheat act under which plaintiff claims. He testifies that, shortly after her husband's death, plaintiff asked him not to interfere with her, and he said he would not so long as she lived. At best this talk constitutes no agreement, no recognition of superior title, and is entirely consistent with recognition merely of a conflict in the rights of the parties; but in any event, after this conversation, plaintiff changed the character of her possession when she obtained the passage of the escheat act and had the certified copy recorded as a deed. Without such act, she had no claim of any right, title, or interest in and to the premises, except as the widow of deceased. With such act, she acquired a claim of title as sole owner in fee. Silas testifies that he heard, within a month or so after the passage of the act, that she "had the property transferred to her." Her assertion of an adverse title was thus brought home directly to the heirs. The evidence may be searched in vain for "a single lisp of acknowledgment" thereafter on the part of the

plaintiff that she claimed no title as against the heirs, or that her holding was founded to any extent upon their permission.

It is one thing to recognize or admit title in another; but it is another thing to recognize or admit the existence of a claim of adverse title, without recognizing or admitting its validity. Plaintiff asked no favors of Silas after the passage of the escheat act, and there is nothing in the relationship of the parties to sustain the contention that she has occupied these premises in this exclusive way for more than 33 years, recognizing that her tenure was at the pleasure of the heirs and dependent on the bare promise of Silas Noble that he "wouldn't interfere with her as long as she lived." On the contrary, all the circumstances indicate a continuous and consistent denial by her of any right in the premises in any other than herself, and full knowledge by the heirs of such claim on her part.

Silas Noble gives his version of a conversation with plaintiff at Olcott in the fall of 1907, shortly before this action was begun, which fairly presents the full extent of his claim of title and plaintiff's recognition thereof. He says:

"She told me she was going to dispose of it [the property in suit] to her nieces, and I told her I didn't think she could give away what didn't belong to her. I told her the heirs might find out who it belonged to, and she told me it belonged to her, and I told her I didn't know about that; but I told her certainly, when she was dead, we would find out who it did belong to."

None of the other heirs at law ever made any claim of ownership, except as Silas may have represented them. "Possession, accompanied by the usual acts of ownership, is presumed to be adverse until shown to be subservient to the title of another." Barnes v. Light, 116 N. Y. 34, 22 N. E. 441. Plaintiff entered into possession of the premises under a claim of title, exclusive of any other right, founding the claim upon the escheat act as being a conveyance of the premises in question, and there has been a continued occupation and possession of the premises for upwards of 20 years under the same claim.

The premises are therefore deemed to have been held adversely, and plaintiff has established a title by adverse possession.

Judgment accordingly.