Homer G. WOODLAND, Plaintiff
and Appellant,

v.

Lawrence WOODLAND, Earle D. Hartung
and Alfred A. Thompson, Defend-
ants and Respondents.

No. 8243.

Supreme Court of North Dakota.

Dec. 8, 1966.

Rehearing Denied Jan. 19, 1967.

Higgins & Christensen, Bismarck, for plaintiff and appellant.

Floyd B. Sperry, Bismarck, for defendants and respondents.

Thompson & Lundberg, Bismarck, for defendant, Alfred A. Thompson.

TEIGEN, Chief Justice.

Plaintiff appealed from an adverse judgment, demanding trial de novo. He also appealed from an order denying a new trial.

This action was brought in the District Court of Emmons County, North Dakota, as an action to quiet title and for damages for trespass to the Southwest Quarter of Section 12, in Township 136 North of Range 79. The defendants answered in the form of a general denial, and counterclaimed asking that title be quieted in defendants Hartung and Thompson to Lots 6, 7, and 8, of said Section 12, including accretions thereto, and for damages for trespass. The plaintiff replied to the counterclaim, generally denying the allegations, and cross-claimed, asking that title be quieted in the plaintiff to said Lots 6, 7 and 8, of Section 12, except to a small tract of about 12 acres which he alleges is located within an area originally surveyed as a part of Lot 8. The cross-claim is premised on the ground that the plaintiff is also the owner of Sections 2 and 11, in Township 136 North of Range 79, and accretions thereto, which accretions now extend over the area which was formerly Lots 6, 7, and 8, except for the said 12 acres located in Lot 8, and prays that title be quieted in the plaintiff as to the accretions. The defendant Noel Woodland was dismissed from the action by agreement of the parties. Lawrence Woodland is a tenant of the defendants Hartung and Thompson. This action was tried to the court without a jury.

This dispute arises as a result of changes that occurred in the main channel of the Missouri River over a long period of time. In the trial of the case much evidence was adduced and many exhibits introduced. Many of the exhibits consisted of maps, photographs, and the original surveys made of the area in question. We have prepared a composite sketch from the various maps, surveys, and photographs which we believe fairly represents true locations of the fractional subdivisions of land and the channel of the river as it existed at different times and is helpful in understanding the facts in this case.

The main issue established by the complaint involves that parcel of land shown on our sketch, triangular in form, and designated ABC. It is a part of the southwest quadrant which plaintiff describes as the Southwest Quarter. The defendants claim the same parcel as a part of Lots 7 and 8, as originally surveyed. In addition, both parties claim that as a result of the process of erosion and accretion by the river they are the owners of additional lands as alluvium. We will consider these claims separately in this opinion.

We shall first deal with the plaintiff's claim under his complaint. He asks that title be quieted in him to the Southwest Quarter of Section 12. As originally surveyed, the area claimed by the plaintiff was described as Lots 10 and 11, a part of Lot 4, and that part of Lots 7 and 8 which extends south across the north line extended of the Southwest Quarter of Section 12, and marked on our sketch as triangle ABC. Because of the change that has taken place in the main channel of the Missouri River since the original survey, the river is no longer located within the geographical area claimed by the plaintiff. The plaintiff's claim to title to the Southwest Quarter of Section 12 is based on the theory of adverse possession, accretions to Lots 3 and 4 in Section 12, and a district court judgment entered in an action entitled Woodland v. Hurst docketed in Emmons County on March 3, 1960. This judgment purports to quiet title in this plaintiff to the Southwest Quarter of Section 12. No appeal was taken and it is final. Thus he now claims the defendants are estopped to assert any title thereto. The entire district court file

in the case of Woodland v. Hurst was introduced in evidence and made a part of the file in this case. The judgment in that action quiets the title to the said Southwest Quarter of Section 12 in the plaintiff, Homer G. Woodland. We have examined this file and all the papers contained therein. We find the defendants named in this action, Hartung and Thompson, and their predecessor Patrick Joseph Cox or his guardian, were not named as defendants and were not made parties in Woodland v. Hurst. The record in the instant action discloses that Patrick Joseph Cox acquired title to Lots 6 and 7 of Section 12 by United States Patent dated July 28, 1926, and that he acquired title to Lot 8 of said Section 12 by United States Patent dated April 9, 1926. Both patents were filed for record in the office of the register of deeds on August 12, 1926. The evidence also establishes that he lived upon this property in buildings which he erected from about 1920 to about 1935; that he became incompetent, and a guardian was appointed in Emmons County. Lots 6, 7, and 8 were sold in guardianship proceedings, and guardian's deed issued and delivered October 1, 1958, to the defendant Hartung, who in turn conveyed an undivided one-fourth interest therein to the defendant Thompson by deed dated October 21, 1958. The guardian's deed to the defendant Hartung was placed of record in the office of the register of deeds of Emmons County on November 28, 1958. The Woodland v. Hurst action to quiet title was commenced in 1951, and concluded in 1960 by the entry of an amended judgment. The summons in that action, which was served by both personal service and by publication, describes the East Half of the Southeast Quarter and Lots 3 and 4 of Section 12, Township 136 North of Range 79 "and all accretions to the above-described land," and other lands. The summons names certain defendants, and in addition "all other persons unknown, having or claiming to have any right, title, interest in or to, or lien or encumbrance upon the premises described in the complaint." The premises described in the complaint are the same as those described in the summons. The action was venued in Emmons County. The Woodland v. Hurst action was commenced by Lawrence Woodland, and the plaintiff in this action, Homer G. Woodland, was named as a defendant. The action arose principally out of a dispute between the various members of the Woodland family over property left by their father on his death. Through various agreements between the heirs who were parties to the action, made during the pendency of the action, it was agreed that the Southwest Quadrant of Section 12 accreted to Lots 3 and 4 of Section 12, and that therefore the action should be construed to include this quadrant which was described as the Southwest Quarter of Section 12. It was also agreed that various members of the Woodland family would choose certain tracts of land by a method provided in the agreement, and that the title to the land so chosen would inure to the one who chose it. Carrying out this agreement, the plaintiff in this action, Homer G. Woodland, chose the Southwest Quarter of Section 12 as a part of the land he wanted. The court, in approving the agreement, adopted the division that was agreed upon and quieted the title to the Southwest Quarter of Section 12, and other lands, in Homer G. Woodland. The court also quieted title to other land not important here in other members of the Woodland family, and thus settled a long-standing family controversy.

■ The plaintiff now claims the judgment in the action described above (Woodland v. Hurst) is res judicata to the defendants Hartung and Thompson in this action. He argues that because the summons in the Woodland v. Hurst action was published and it named unknown defendants, that it constituted service upon Patrick Joseph Cox, the defendants' predecessor, who was then the owner of the said Lots 6, 7, and 8, of Section 12. Section 32–17–07, N.D.C.C., which at the time of the commencement of the action in Woodland v. Hurst was Section 32–1707, N.D.R.C.1943, provides the

grounds upon which service by publication may be obtained on unknown persons defendant. These grounds are exclusive to actions to quiet title. Section 32–1706, N.D.R.C.1943, states who may be joined as unknown persons under Section 32–17–07, supra, as those whose interest in the real estate described in the complaint does not appear of record in the office of the register of deeds, the clerk of the district court, or the county auditor, and who are not in possession. Stewart v. Berg, N.D., 65 N.W.2d 621; Nystul v. Waller, N.D., 84 N.W.2d 584. The requirements of the statutes were not met in this case. The interests of Patrick Joseph Cox were shown of record in the office of the register of deeds of Emmons County, the county in which the action was venued and alleged as the county in which the land was situated. We find service by publication was not made upon Patrick Joseph Cox or his guardian. The district court in Woodland v. Hurst did not acquire jurisdiction over the person of Patrick Joseph Cox or his guardian. For this reason judgment in Woodland v. Hurst is not res judicata to these defendants as the successors of Patrick Joseph Cox.

Secondly, the plaintiff claims to have adversely possessed triangle ABC for a period of more than twenty years; that therefore these defendants are estopped from making claim to the triangle ABC under Section 28–01–05, N.D.C.C., which provides that no cause of action or defense or counterclaim to an action founded upon title shall be effectual unless the person interposing the defense or counterclaim or his predecessor was seized or possessed of the premises within twenty years before the defense or counterclaim is made, or under Section 47–06–03, N.D.C.C., which provides that title to real property vested in one who is in actual open, adverse and undisputed possession of the land under color of title for a period of ten years and that payment of all taxes and assessments legally levied thereon shall be valid.

Section 28–01–07, N.D.C.C., provides a presumption against adverse possession. It states:

28–01–07. Presumption against adverse possession of real estate. In every action for the recovery of real property or for the possession thereof, the person establishing a legal title to the premises shall be presumed to have been possessed thereof within the time required by law, and the occupation of such premises by any other person shall be deemed to have been under and in subordination to the legal title, unless it appears that such premises have been held and possessed adversely to such legal title for twenty years before the commencement of such action.

For the purpose of constituting adverse possession by a person claiming title not founded upon a written instrument, and none is claimed here, or upon a judgment or decree, we find there is none here as against these defendants, the land shall be deemed to have been possessed and occupied only in the following cases: (1) "When it has been protected by a substantial enclosure;" or (2) "When it has been usually cultivated or improved." Section 28–01–11, N.D.C.C. For any of these acts to be adverse, they must not only be actual, but also visible, continuous, notorious, distinct, and hostile, and of such character as to unmistakably indicate an assertion of claim of exclusive ownership by the occupant. Enderlin Investment Company v. Nordhagen, et al., 18 N.D. 517, 123 N.W. 390.

As to plaintiff's alleged adverse possession, the testimony pertaining to use was directed generally to the Southwest Quarter of said Section 12, and not to the triangle in dispute marked ABC on our sketch. It appears that plaintiff cultivated some of the land in several small tracts of about 25 to 30 acres to start with; that he has increased the number of acres under cultivation to about 65 acres, and that the

land was used to graze cattle in the fall of the year after the crops were removed. There is no evidence establishing that triangle ABC was cultivated or put into crops. Section 28–01–10, N.D.C.C., provides:

> When there has been an actual continued occupation of premises under a claim of title exclusive of any other right, but not founded upon a written instrument or upon a judgment or decree, the premises actually occupied and no other shall be deemed to have been held adversely.

There is evidence that a fence was erected on the north line of the triangle ABC in 1930 or 1933. Testimony indicates that this fence was erected by the plaintiff's father while he lived, and that he was assisted by Patrick Joseph Cox who then owned Lots 6, 7, and 8. The testimony reveals the fence was not erected for the purpose of excluding Patrick Joseph Cox from the area designated on our sketch as the triangle ABC. Thus it does not appear that the possession of the triangle ABC in its inception was adverse. Possession of real property which is permissive in its inception can become adverse only when there is a disclaimer of the true owner's title or there are acts of such an unequivocal nature on the part of the possessor that notice of the hostile character of the possession is brought home to the owner. Ellison v. Strandback, N.D., 62 N.W.2d 95.

The burden is upon the plaintiff to establish adverse possession for the statutory period by clear and convincing evidence. Ellison v. Strandback, supra; Rovenko v. Bokovoy, 77 N.D. 740, 45 N.W. 2d 492; Morgan v. Jenson, 47 N.D. 137, 181 N.W. 89.

In order to prove adverse possession, plaintiff must prove that possession of the triangle ABC became adverse to the fee record owners and remained continuously hostile and adverse thereafter for the statutory period. The triangle ABC consists of only 13.6 acres as originally surveyed. It is low, marshy land, best suited for hunting. It has grown up to high reeds. The fence referred to earlier has been permitted to fall into disrepair. A fire had burned over the area some years before the trial. It burned the fence posts, and the fence was neither repaired nor rebuilt. At the time of the trial it had almost completely disappeared. It appears that the triangle ABC was allowed to remain in its wild state. It is our view, therefore, that the evidence not only fails to show a hostile possession amounting to a disclaimer or of a character to place the fee owner on notice during the statutory period, but that the use of the land itself in the manner heretofore described even in the absence of permissive use in its inception was not sufficient to establish that the land was held adversely to the fee owner of record. Page v. Smith, 33 N.D. 369, 157 N.W. 477.

Plaintiff also contends he has paid taxes upon the lands. However, we do not find that the record sustains his contention. The county auditor's statement of taxes paid was introduced in evidence. It states that taxes were paid on the Southwest Quarter of Section 12 by the plaintiff commencing in 1957. It also states that taxes were paid by the defendants and their predecessors on Lots 7 and 8 in Section 12 from 1942 to date. There is no evidence of record from which we may determine whether triangle ABC was assessed as a part of the Southwest Quarter of Section 12 for tax purposes nor that it was excepted from Lots 7 and 8.

This disposes of the plaintiff's complaint except for the balance of the southwest quadrant described as the Southwest Quarter of said Section 12. However, for reasons hereinafter stated, we find we need not consider his claim of title to the remainder in this action, and therefore accept the findings of the court in Woodland v. Hurst.

We shall next consider the defendants' counterclaim, that title be quieted in them as to Lots 6, 7, and 8, of said Section 12, and the accretions thereto. The chain of title to Lots 6, 7, and 8, of Section 12 shows that patents thereto were issued in 1926 to Patrick Joseph Cox. The defendant Hartung received title to said lots by virtue of a guardian's deed from the guardian of said Patrick Joseph Cox, an incompetent. Thereafter the defendant Hartung conveyed by quitclaim deed to the defendant Thompson an undivided one-fourth interest therein.

The defendants contend that certain lands that were formerly located in the Southwest Quarter of Section 12, and the East Half of Sections 11 and 14, were eroded away by the river and accreted to their lots, and that such accretion runs south to the left bank of the river as now located in Section 14; that the accreted area consists of about 230 or more acres; that in addition thereto there accreted to the shoreline of Lot 6 alluvium which extends into Sections 2 and 11.

The plaintiff, Homer G. Woodland, disputes the claims made by the defendants. He argues that all of Lots 6, 7, and 8 were eroded away and alluvium accreted to Sections 2 and 11. He bases his argument on his contention that the river channel moved slowly and imperceptibly south and east, eroding away Lots 6, 7, and 8, until the right bank of the river channel formed the north, northwest, and northeast boundaries of a small, approximately 12-acre tract of land located in Lot 8, described in the transcript as Cox's Island. It is drawn into our composite sketch and labeled "Cox's Island." It will hereinafter be referred to by that name.

The plaintiff contends the river continued to change its course, eroding its right bank and accreting to its left bank until the right bank formed the boundary of the convex portion of Cox's Island; that in about the year 1899, the river changed its channel to the south by an avulsive process, and its left bank became the boundary of the concave portion of Cox's Island. In other words, the change in the river channel by avulsion shifted its channel from north to south, leaving Cox's Island uneroded. On this theory the plaintiff cross-claimed, asking that title be quieted in him as to all of Lots 6, 7, and 8, except for Cox's Island, and challenged the jurisdiction of the trial court over the subject matter of the counterclaim on the theory that Cox's Island (the only part remaining of defendants' land) remained as a part of Morton County and is not within the jurisdiction of the Emmons County district court.

■■■■ The eastern boundary of Morton County and the west boundary of Emmons County are established by statutes as the main channel of the Missouri River. Sections 11–01–16, 11–01–31, N.D.C.C. Thus all of the area within the peninsula formed by the 1888 channel of the river as shown on our sketch was a part of Morton County, whereas the lands located on the outside or left bank of the channel of said river were a part of Emmons County. However, the plaintiff seems to have abandoned his challenge to the jurisdiction of the court, because he now admits that if the river changed its course by an avulsive process in 1899, from a point above or to the north of Cox's Island as shown on our sketch, to a point immediately south thereof, that the Southwest Quarter of Section 12 might also be located in Morton County. Further it does not appear to sustain the plaintiff's claim that the river had changed its channel by a slow and imperceptible process and that the area to which he now makes claim, being the Southwest Quarter of Section 12, is all rebuilt alluvium. Section 28–04–01, N.D.C.C., requires that an action for the recovery of real property, or an estate or interest therein, must be brought in the county in which the subject matter or some part thereof is situated. This requirement we have held is jurisdictional. Johnson v. Johnson, N.D., 86 N.W. 2d 647. There is no evidence in this record

in proof of the avulsive change claimed by the plaintiff to have occurred in 1899. However, the attorneys stipulated at the beginning of the trial that the avulsive change occurred at the time and place indicated above.. It is a well-established rule that an artificial or sudden change as by avulsion in the course of a stream forming the boundary between counties which causes a new channel does not operate to change the legal boundary between counties. 20 C.J.S. Counties § 15. Thus the effect of the stipulation if accepted by the court would freeze the boundary between Morton and Emmons counties in the dried up main channel of the Missouri River to the northwest, north and northeast of said Cox's Island. The effect of the stipulation if accepted by the court would also deprive the Emmons County district court of jurisdiction of the land described in the complaint. However, as we stated earlier, there is no evidence in this record, except the stipulation, to indicate by what means the river changed its channel from the 1888 location as shown in our sketch to the 1899 location. Generally there is a presumption that a change in a river's course is by accretion rather than by avulsion. Wyckoff v. Mayfield, 130 Or. 687, 280 P. 340; Hall v. Brannan Sand and Gravel Co., Colo., 405 P.2d 749; McCafferty v. Young, 144 Mont. 385, 397 P.2d 96. In view of the total absence of direct evidence as to the manner by which the river changed its channel, we reject the stipulation made by the parties that an avulsive change occurred. The record establishes that taxes were paid to Emmons County on Lots 6, 7, and 8, from 1942 to 1961; on Lot 5 from 1942 to 1949 and 1961; on the Southwest Quarter of Section 12 (a quarter section which the plaintiff claims) from 1957 to 1961; and that the remaining area not heretofore described and located within said peninsula was also assessed and taxed by Emmons County. It also appears that the United States Government Patents received by Patrick Joseph Cox were filed and recorded in the office of the register of deeds of Emmons County in 1926, and that the guardianship proceedings in the matter of Patrick Joseph Cox were venued in Emmons County. There is no evidence that Morton County has exercised any jurisdiction over the land in question. Jurisdiction of the subject matter may not be conferred by consent or waiver by the parties. Bryan v. Miller, 73 N.D. 487, 16 N.W.2d 275.; In re Reynolds' Will, N.D., 85 N.W.2d 553; Gunsch v. Boehler, N.D., 85 N.W.2d 876; In re Edinger's Estate, N.D., 136 N.W.2d 114; Johnson v. Johnson, supra. The converse is also true. Questioned jurisdiction of the subject matter should be investigated and decided by the court. King v. Menz, N.D., 75 N.W.2d 516. The trial court in this case found it had jurisdiction and that the plaintiff is estopped from claiming that the court does not have jurisdiction. We find it was a question for the court to determine and not the parties, and we agree with the decision of the lower court.

We find the defendants have established their claim of ownership to Lots 6, 7, and 8, of said Section 12. We must now consider whether they have established claim to any accretions thereto. First, we find the record does not sustain the contention made by the plaintiff that Lots 6, 7, and 8, except for Cox's Island, is remade alluvium attaching as accretion to Sections 2 and 11 which the plaintiff owns. Second, we find the record does not sustain the contention made by the defendants that lands accreted to Lot 6 toward the northwest into a portion of Sections 2 and 11; that, furthermore, if such an accretion occurred, the defendants are barred from making any claim thereto for the reason that. in a district court action entitled Krause et al. v. Hanson et al. the accretions to Sections 2 and 11 to the east were determined. Krause, a former owner of Lots 7 and 8 in Section 2, and the eastern portion of Section 11, brought an action, naming Patrick Joseph Cox as one of the defendants, to quiet the title to such accretions. The plaintiff Woodland purchased the Krause land after the action was completed. In the Krause et al. v. Hanson et

al. case, the trial court caused a judgment to be entered in 1932, quieting the title in the plaintiff's predecessor Krause in and to all accretions to the said lands located in said Sections 2 and 11. It found the accretions to the plaintiff's lands located in Sections 2 and 11 ended at the west line of Section 12 extended. These defendants, as successors of the said Patrick Joseph Cox, are bound by that judgment. The defendants contend, however, that the instrument entered is not a judgment. A certified copy thereof was introduced and was received in evidence. It is entitled "Judgment Order" and is signed by the trial judge and the clerk of the district court. It does not direct the entry of a judgment, but states it is "adjudged and decreed that the plaintiffs G. R. Krause and Claude G. Krause as administrator of the estate of H. G. Krause, deceased, are the owners of and that the title be and is hereby quieted in them as against the above named defendants and as against each one of them, in and to the lands and premises described as follows:". This is followed by a description of the land. It is clearly not an order for judgment, and is sufficient in substance as a judgment. Cameron v. Great Northern Ry. Co., 8 N.D. 124, 77 N.W. 1016. It clearly expresses a final determination by the court, and at once ended the case. It contemplates no further judicial action. McTavish v. Great Northern Ry. Co., 8 N.D. 333, 79 N.W. 443; Hagler v. Kelly, 14 N.D. 218, 103 N.W. 629. It was signed by the clerk of the district court, and it is certified by the present clerk of court that it is now on file and of record in said district court. It shows no recording data, but it is assumed that an official duty has been performed regularly. Section 31–11–03, N.D. C.C. Linden School District No. 24 v. Porter, N.D., 130 N.W.2d 76. No evidence has been introduced to overcome such presumption, nor is it claimed that the official duty was not performed. We find the defendants', Hartung and Thompson, claim to accretions beyond the west section line of said Section 12 fails because the decision in Krause et al. v. Hanson et al. bars the defendants from making the claim.

■■■■ The defendants Hartung and Thompson also contend that the county court, having jurisdiction over the guardianship of Patrick Joseph Cox at the time of the commencement of the action of Krause et al. v. Hanson et al. never gave its consent that the action be defended in the district court, and that because the county court had exclusive jurisdiction over the incompetent and his estate, any action taken by the guardian or his attorneys in defending that action is void. There is no challenge that the guardian and his ward were not properly served in the action, and the judgment entered therein recites that the said "Patrick Joseph Cox, an incompetent, by Roy Logan as the latter's guardian;" appeared by Mr. William Langer and Mr. Robert Birdzell. Both are well known to this Court as prominent practicing attorneys in North Dakota at the time the said action was tried. We see no merit to this contention. A general guardian must appear for and represent his ward in all suits and legal proceedings unless a special guardian is appointed for that purpose. Section 30–14–06, N.D.C.C. The ward in this case was not represented by a special guardian and his general guardian was named as a defendant. The ward and his guardian were represented by attorneys who defended the suit brought against them, and whether they were or were not approved by the county court having jurisdiction of the guardianship proceedings is not important to the legality of the proceedings in the district court.

■■■■ The defendants by their counterclaim also contend they are owners of certain accretions to Lot 7 of said Section 12. However, said Lot 7 is not riparian, but a remote fractional lot bounded on all sides by established governmental survey lines. Whether said Lot 7 became riparian is unimportant because the owner of originally nonriparian land has title only to the accreted lands within the boundaries of the

formerly nonriparian tract, and all other lands accreting thereto do not become the property of the owner of such nonriparian tract. Perry v. Erling, N.D., 132 N.W.2d 889.

We come now to Lot 8, which at the time of the original survey was a riparian fractional subdivision. According to the original survey, it was bounded on the southeast by the Missouri River. The record in this case is completely devoid of any evidence of accretions that formed before the river was located in its 1899 channel. In fact, there is no direct evidence as to accretions being formed in any particular area prior to 1916, at which time the river channel was approximately 40 rods south of Cox's Island. The only evidence in the record which casts any light on the question pertains to Cox's Island, shown on our sketch, which is located within Lot 8. The testimony in this connection reflects that the surface of Cox's Island is from 5 to 12 feet higher than the surrounding area, that it contains large trees perhaps 2 feet in diameter, that all of the surrounding area within the peninsula is low, much of it overgrown with smaller trees and brush, and that it contains sloughs, potholes, marsh, and reeds.

The oldest witness to testify remembers back to about the year 1916, when he was 7 or 8 years of age. He testified that at that time the river was about 40 rods south of Cox's Island, and that thereafter it gradually moved farther south and that by 1926 it was about one-half mile south of Cox's Island.

■ It appears that for many years all of the land surrounding Cox's Island was a flood plain that would be inundated by the river during high water periods; that the channel of the river has moved slowly, perhaps in a southwesterly direction, over a period of many years. It is also indicated there have probably been two avulsive changes, perhaps one in about 1899, and one in about 1926. There is no credible evidence as to the formation of land by ac-

cretion to Lot 8, nor the amount of accretions, if any. We find that the defendants have failed to prove by this record any accretions to Lot 8.

■ Where a defendant in an action to quiet title alleges that he is the owner of the land and seeks to have the title quieted in him, he assumes the burden of proving his allegations, and in effect becomes a party plaintiff. Robertson v. Brown, 75 N.D. 109, 25 N.W.2d 781. In an action to quiet title to realty, the plaintiff must rely upon the strength of his own title and not upon the weakness of that of his adversary. Pierce Township of Barnes County v. Ernie, 74 N.D. 16, 19 N.W.2d 755; Robertson v. Brown, supra; Star v. Norsteby, 75 N.D. 563, 30 N.W.2d 718; Shuck v. Shuck, 77 N.D. 628, 44 N.W.2d 767; Sailer v. Mercer County, 77 N.D. 698, 45 N.W.2d 206, 22 A.L.R.2d 988; Hogue v. Bourgois, N.D., 71 N.W.2d 47, 54 A.L.R.2d 633; Mehlhoff v. Pioneer State Bank, N.D., 124 N.W.2d 401.

In this case the only parties whose interests are adjudicated are the named plaintiffs and the named defendants, except the defendant Noel Woodland who was dismissed from the action by agreement of the parties. The record does not establish whether or not there may be claims made to accretions by owners of other properties in the area. It does not establish who, if any, were the owners of Lots 10 and 11 of Section 12 which are located in the Southwest Quarter thereof. In this case our findings and the judgment on remittitur to be entered thereon must be limited to the interest found in favor of one as affecting the rights of the other.

We find that the plaintiff has a title that is superior to any rights claimed by the defendants as to all of that portion of the Southwest Quarter of Section 12, except the triangle marked ABC on our sketch, and we find that the defendants have a title that is superior to any rights claimed by the plaintiff, Homer G. Woodland, as to Lots 6, 7, and 8, (which includes the tri-

angle marked ABC on our sketch) of said Section 12. We also find that accretions, if any, to Lot 8, have not been established with sufficient certainty to permit us to make any finding relative thereto.

The trial court quieted title in the defendants to Lots 6, 7, and 8, and in addition thereto, as accretions to said lots, a major portion of the Southwest Quarter of Section 12. These additional lands which the trial court found had accreted to the said lots may be succinctly described as an area commencing at a point where the north line of Lot 8 intersected the right bank of the 1888 channel of the river; thence due east to the center of the river; thence southwesterly following the middle of the 1888 channel of said river to a point where it intersected with the south section line of Section 12 extended; thence due west along such section line extended to a point where it intersects with the west section line of Section 12 extended; thence due north to the southwest corner of Lot 7. It also squared the northwest corner of Lot 6.

For the reasons stated in this opinion, we modify the judgment of the district court to eliminate therefrom that part which quiets title to accretions to Lots 6, 7, and 8.

Each of the parties hereto also asks for damages for trespass, but in view of our holding on the matter of accretions, we find the evidence introduced by the defendants does not sustain their claim for damages for trespass. The plaintiff submitted no proof in support of claimed damages for trespass. We sustain the trial court's dismissal of the respective claims for damages for trespass.

The plaintiff has also appealed the order denying a motion for a new trial. The motion was made on the grounds of newly discovered evidence and alleged errors of law. The trial court in denying the motion for a new trial states that each of the two witnesses named in his affidavit in support of the motion was well-known to the plaintiff's attorney. One of them had testified in the case of Woodland v. Hurst, referred to earlier in this opinion, in which case plaintiff's attorney herein represented this plaintiff who was a defendant in that action. The other witness was the county auditor of Emmons County who was well-known to the plaintiff. Certain testimony obtained from the auditor's office was introduced in that main trial. It found that the plaintiff had not exercised reasonable diligence in not having interviewed these witnesses which were well-known to him, and that the same diligence which led to the discovery of new evidence after trial would also have led to its discovery had such diligence been exercised before the trial, and, therefore, new trial was denied. A motion for a new trial on the ground of newly discovered evidence is addressed to the sound judicial discretion of the trial court, and the appellate court will not interfere except in case of an abuse of discretion. The record discloses no abuse of discretion on the part of the trial court in denying new trial on the ground of newly discovered evidence. Baird v. Kensal Light & Power Co., 63 N.D. 88, 246 N.W. 279; Blum v. Standard Oil Co., 68 N.D. 329, 279 N.W. 764; Hochstetler v. Graber, 78 N.D. 90, 48 N.W.2d 15. The errors at law alleged in the motion for new trial have been considered on this appeal from the judgment. We find no abuse of discretion in the denial of the motion for new trial.

The judgment is modified, and as modified it is affirmed.

STRUTZ, ERICKSTAD and KNUDSON, JJ., concur.

MURRAY, J., not being a member of the Court at the time of submission of this case, did not participate.