Mary Irene CRANSTON, Individually and as executrix of the Estate of Syvilla Ballantyne, Deceased, and Helen Jeanette Ballantyne, Plaintiffs and Appellants,

v.

Ethel WINTERS et al., Defendants and Appellees,

William T. Ballantyne et al., Defendants.

Civ. No. 9158.

Supreme Court of North Dakota.

Feb. 11, 1976.

as the surviving joint tenant of the property, acquired the interest of the other joint tenant, her husband, upon his death, and she still held the fee title at her death, at which time it passed to them under the residuary clause of her will.

The appellees are the eight children of James Ballantyne by a previous marriage and are hereinafter described as the children of James. They claim title to the property by reason of a final decree of distribution issued pursuant to the will of James, which purported to give a life estate in the property to Syvilla, with the remainder to them. They claim title under several theories: (1) that Syvilla, as coexecutrix of the will of James, by her actions in obtaining the final decree of distribution, created an estoppel against herself and her heirs to claim the fee title; (2) that she "elected" to take a life estate under the will, rather than the fee title as surviving joint tenant; and (3) that Syvilla, occupying as life tenant, and the children of James, by occupying for a short period of time after her death, acquired title by adverse possession under Section 47–06–03, N.D.C.C., permitting acquisition of title by ten years' adverse possession under color of title coupled with payment of taxes.

■ The contentions of the children of James are somewhat inconsistent, since election implies a deliberate choice between two inconsistent positions, estoppel implies the loss of a right or property because of acts or representations inconsistent with the right which are relied on by another to his detriment, and adverse possession means the acquisition of the property of another by open and hostile possession for a specified period of time.

■ Of course, a party may take inconsistent positions. Rule 18(a), N.D.R.Civ.P. Here, the trial court gave judgment in favor of the appellees, the children of James, on the ground of estoppel. We reverse, after examining all three grounds asserted by the children of James to sustain their title.

Anderson, Tossett & Berning, Minot, for plaintiffs and appellants; argued by Andrew R. Tossett, Minot.

McGee, Hankla, Backes & Wheeler, Minot, for defendants and appellees; argued by Orlin W. Backes, Minot.

VOGEL, Justice.

This case involves competing claims of title to real estate in the city of Minot. It is alleged by the appellants, the residuary legatees and devisees of Syvilla Ballantyne, hereinafter described as Syvilla's sisters, that they are the owners of the property. They claim their title arises because Syvilla,

The facts are undisputed. On February 11, 1952, James Ballantyne and Syvilla Ballantyne, as joint tenants, acquired title to Lot 14 of Block 5 of Blaisdell-Bird Addition to the City of Minot. They lived thereafter in the house located on the lot. On April 10, 1959, James Ballantyne died, leaving a will. His will made no reference to the joint tenancy and purported to devise the property in question to his wife, Syvilla, for her life, with the remainder to his eight children by a previous marriage. James and Syvilla had no children of their marriage. Syvilla was named coexecutrix of the will. She and the other executor probated the will, signed an inventory showing the property in question as an asset of the estate, and signed a petition for final decree of distribution. Pursuant to the petition for the final decree of distribution, the county court issued its final decree of distribution decreeing the property to Syvilla Ballantyne for her life or until her remarriage, with the remainder to the children of James.

Syvilla occupied the home and paid the taxes on it until her death on May 11, 1973. She did not remarry. She left a will, which did not mention the property in question, but provided that the residue of her estate, after certain specified bequests, pass to her sisters, who are appellants herein, and a brother, who predeceased her. Thus her two sisters were her residuary legatees and devisees, as well as her heirs.

After Syvilla's death, the children of James took possession and attempted to sell the property. It was then that they discovered that the title had been in joint tenancy at the time of the death of James, and this action was commenced.

■ Before discussing the three issues raised by the appellants, we note the fundamental fact that title to joint-tenancy property in this State vests immediately in a surviving joint tenant upon the death of the other joint tenant. It passes to the survivor by right of survivorship and not by the will. *In re Kaspari's Estate*, 71 N.W.2d 558,

564 (N.D.1955); *Schlichenmayer v. Luithle*, 221 N.W.2d 77, 83 (N.D.1974). Therefore, Syvilla Ballantyne became the owner of the fee title to the property immediately upon the death of her husband, James, regardless of the provisions of his will. The joint tenant who dies leaving a surviving joint tenant has no interest which he may devise. *In re Kaspari's Estate, supra.*

■ Certain other facts stand out. First, there is no evidence that Syvilla knew, during her lifetime, that she had acquired title to the property in question upon the death of her husband. The children of James argue that she made a choice by proceeding with the probate which gave her a life estate, but there is nothing to show that she knew there was a choice to be made. In fact, the record indicates that James either did not know or forgot that the joint tenancy existed; otherwise, he would not have attempted to devise what passed immediately to his joint tenant upon his death. Obviously, neither the county judge nor the attorneys who probated the estate of James were aware of the facts; otherwise, they would not have performed the idle acts involved in listing the property in the inventory and final decree. We find no reason to assume that Syvilla knew what neither her husband, the county judge, or the attorneys knew. As we said in *Sittner v. Mistelski*, 140 N.W.2d 360, 368 (N.D.1966):

"We cannot expect this farm wife, inexperienced in business and unfamiliar with probate and real estate law, to know the true state of the title to land, when none of the lawyers or the county judge concerned with the probate sale knew the title's true state."

Second, the children of James take a position which we find difficult to accept: that Syvilla intentionally chose to risk the hazards of establishing by the perilous routes of estoppel or election or adverse possession that she had a lesser title than she already had by operation of law. It strains credulity to argue that she chose a life estate, established by such risky methods, over a fee title which was beyond dispute.

It is possible, of course, that she wanted the children of James to have the property. If so, and if she had known she had the fee to dispose of as she wished, surely she and her legal advisers would have chosen to deed the property to the children of James, retaining a life estate, or she would have made a will devising the property to them. She did neither, and we find it hard to believe that she knowingly, or even carelessly, chose to hazard establishing a life estate in herself by adverse possession or election or estoppel.

## EQUITABLE ESTOPPEL

■ We have held several times that persons having interests in real estate may be estopped by their actions to assert their title. In several of such cases, beginning with *Gjerstadengen v. Hartzell*, 9 N.D. 268, 83 N.W. 230 (1900), a case with many similarities to this one, and most recently *Hutton v. Korynta*, 218 N.W.2d 177, 180 (N.D. 1974), we have quoted from *Boggs v. Merced Mining Co.*, 14 Cal. 279, at 367–368:

"It is undoubtedly true that a party will in many instances, be concluded by his declarations or conduct, which have influenced the conduct of another to his injury. The party is said in such cases to be estopped from denying the truth of his admissions. But to the application of this principle with respect to the title of property, it must appear: *first*, that the party making the admission by his declaration or conduct was apprised of the true state of his own title; *second*, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; *third*, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge, and, *fourth*, that he relied directly upon such admission, and will be injured by allowing its truth to be disproved."

See also *Sorenson v. Olson*, 235 N.W.2d 892, 896 (N.D.1975), *Sittner v. Mistelski, supra,* and *Loff v. Gibbert*, 39 N.D. 181, 166 N.W. 810 (1918).

■ Section 31–11–06, N.D.C.C., our statutory restatement of equitable estoppel, includes a requirement that the person to whom the estoppel is to be applied must have "intentionally and deliberately" led the other party to believe a thing true. That element is lacking here.

■ In *Sittner v. Mistelski, supra,* where the widow had done more to indicate a lack of title in herself than Syvilla did here, we held that the widow had no duty to check the true state of the title, that the public records were as available to the other parties as they were to her, and, in substance, that she neither falsely represented nor concealed material facts, did not know the true state of her own title, and neither intended to deceive nor was negligent to an extent amounting to constructive fraud. We believe this case is similar. And see *Gjerstadengen v. Hartzell, supra,* where we held that an administrator who had sold land as property of an estate was not estopped from claiming title upon discovery that he was an owner.

We therefore hold that the trial court erred in finding an estoppel against Syvilla and her sisters.

## ELECTION

■ Any claim that Syvilla somehow "elected" to take a life estate is readily disposed of. She had a fee title by operation of law. She had no right to a life estate under her husband's will, since her husband had no interest which he could devise upon his death during her lifetime. *In re Kaspari's Estate, supra,* 71 N.W.2d 558, at 564.

■ Actually, at all times pertinent to this action, North Dakota law provided no right to elect between taking under a will or under a statute. It was the theory of our law, prior to adoption of the Uniform Probate Code in 1973, effective in 1975, that

the will controlled the distribution and descent of property, subject only to homestead exemption and allowances. Compare Chapter 30–16, N.D.C.C., and Chapter 30.1–05, N.D.C.C. (Uniform Probate Code §§ 2–201 to 2–207, inclusive), and see *Fish v. Berzel*, 101 N.W.2d 548 (N.D.1960), which permitted an election between a contract of adoption and a will but pointed out that we have no statute as to election in such cases and that the rights of the parties are governed by the principles of equitable estoppel.

We have discussed estoppel above. We find no merit in the claim that an election to take a life estate was made, or could be made.

### ADVERSE POSSESSION

As stated above, appellees claim that the possession of Syvilla Ballantyne during her lifetime plus the brief possession of the children of James after her death, totaling more than ten years, plus the payment of taxes and the color of title provided by the final decree of distribution in the estate of James Ballantyne, are sufficient to give them title by adverse possession under the provisions of Section 47–06–03, N.D.C.C. That section provides that

"A title to real property, vested in any person who has been or hereafter shall be, either alone or including those under whom he claims, in the actual open adverse and undisputed possession of the land under such title for a period of ten years and who, either alone or including those under whom he claims, shall have paid all taxes and assessments legally levied thereon, shall be valid in law."

■ A final decree of distribution is sufficient color of title to satisfy this statute. *Chapin v. Letcher*, 93 N.W.2d 415 (N.D. 1958). Since the latest amendment to 47–06–03, in 1953, tacking of possession by various owners is permitted.

The possession of Syvilla was, no doubt, actual, open, and undisputed, but we find no justification in the record before us for a holding that it was adverse to her own heirs and residuary legatees and devisees.

■ We have defined "adverse" in *Woodland v. Woodland*, 147 N.W.2d 590 (N.D.1966), and *Martin v. Rippel*, 152 N.W.2d 332 (N.D.1967). In order to be adverse, the acts upon which the claimant relies must be not only actual "but also visible, continuous, notorious, distinct, and hostile and of such character as to unmistakably indicate an assertion of claim of exclusive ownership by the occupant." *Martin v. Rippel, supra*, 152 N.W.2d 332, at 338, citing *Enderlin Investment Co. v. Nordhagen*, 18 N.D. 517, 123 N.W. 390 (1909), and *Woodland v. Woodland, supra*.

■ We are unable to find anything in the record before us to indicate that the possession of Syvilla was hostile to her sisters, nor are we able to find that her acts were of a character such as to indicate to them an assertion of claim of ownership contrary to their rights. Her possession was consistent with a claim of either fee title or a life estate, and could not be considered to be hostile to either without further evidence.

■ We have held that the burden of proving adverse possession is on the person alleging it [*Brooks v. Bogart*, 231 N.W.2d 746 (N.D.1975)], and that clear and convincing evidence is required [*Woodland v. Woodland, supra*, citing §§ 28–01–05 and 47–06–03, N.D.C.C.].

■ It is basic to our concept of record title that persons with interests in real estate may rely upon the record title without the necessity of checking the title as to subsequent transactions affecting the real estate, in the absence of possession sufficient to constitute adverse possession. See § 47–19–45, N.D.C.C.

"By statute the recording of deeds, mortgages, and instruments affecting title to real property is constructive notice to all purchasers and encumbrancers subsequent to recording. It is not any notice

to prior purchasers." *First National Bank of Dickinson v. Big Bend Land Co.,* 38 N.D. 33, 164 N.W. 322 (1917), Syllabus ¶ 2.

■ Furthermore, the final decree of distribution of the estate of James Ballantyne was an instrument out of the chain of title and is not constructive notice to persons who act in ignorance of its existence. *Doran v. Dazey,* 5 N.D. 167, 64 N.W. 1023 (1895).

■ We hold that the possession of Syvilla Ballantyne was not hostile to the interests of her sisters, who were both her heirs and the remaindermen under the will, since they had no reason to believe that her possession was under any claim other than one of ownership of the fee title to the property. The record discloses nothing which would have brought to their attention any claim that she occupied the premises only as a life tenant.

■ In support of their claim that the acts of Syvilla were sufficient to constitute adverse possession as against her own heirs, the children of James cite two old New York cases, *Criswell v. Noble,* 61 Misc. 483, 113 N.Y.S. 954, *affirmed* without opinion 134 App.Div. 994, 119 N.Y.S. 1122 (1908); and *Kennedy v. Smith,* 204 App.Div. 628, 198 N.Y.S. 655, *affirmed* 237 N.Y. 516, 143 N.E. 724 (1923). In *Criswell,* the New York court held that a deed which conveyed nothing may be sufficient to found a claim of adverse possession on. We agree. It also said that a widow in possession, even without a muniment of title, "may acquire a title by prescription, adverse to the heirs, if her occupancy is open, notorious, visible, and by acts unequivocally conveying to the heirs the information that she is holding in defiance of their title, instead of in subordination to them." 113 N.Y.S. 954, at 957. But we notice that the heirs referred to are the heirs of the former husband of the adverse claimant, and not her own heirs, as in the present case. In *Criswell,* the widow, fearing that she was unable to hold the title because of an alien status, had obtained from the New York Legislature an Act giving her the title formerly held by her husband. Her possession in reliance on such a title was held to be adverse to the heirs of her husband, who were not her heirs. The court found that she had by her acts unequivocally conveyed to the heirs the information that she was holding in defiance of their title. There is no proof in the case before us to the effect that Syvilla unequivocally conveyed to her own heirs that she was holding title adversely to them.

In *Kennedy v. Smith, supra,* a husband and wife had conveyed property to a buyer who subsequently conveyed back to the wife alone. More than forty years later, after the wife had remarried and occupied and claimed and improved the property and devised it by will, the heirs of two children of her marriage to her first husband and heirs of a child of his by an even earlier marriage claimed title as against the devisees under her will. While the ancestors of some of the claimants were heirs of both the husband and the wife, the brief opinion of the court of appeals makes clear that they founded their claim upon the assertion that they were heirs of the first husband, not that they were heirs of the wife.

Thus both of the New York cases relied upon by the appellees are not really in point where the adverse possession is claimed to be as against the heirs of the adverse possessor. Instead, they would be in point if the issue here were between Syvilla's heirs, if they were claiming by adverse possession, and the children of James, if they were claiming as heirs of an ancestor with a claim to the title.

As we view the New York cases, they are authority for the proposition that a widow may acquire title by adverse possession as against the heirs of her deceased husband. They are not in point as to the facts before us.

■ No case in point on adverse possession has been found, probably because one is not an heir until his ancestor dies,

and therefore the possession of the ancestor can never be adverse to his heir, or because the term "adverse possession" is a method of acquiring title to the exclusion of the true owner [see *Woodland v. Woodland, supra,* 147 N.W.2d 590, at 598], and use by a person of his own property is never "adverse." *Weiss v. Cord Helmer Realty Corp.,* 140 N.Y.S.2d 95 (Sup.Ct.1955); *Pluhar v. Guderjahn,* 134 Mont. 46, 328 P.2d 129 (1958).

The children of James suggest that Section 28–01–13, N.D.C.C., preserves their right of possession. The section reads:

"The right of a person to the possession of any real property shall not be impaired nor affected by a descent being cast in consequence of the death of a person in possession of such property."

This section originated as Section 50 of the Code of Civil Procedure included in the general recodification of our laws in 1877 and has never been construed by this court. We believe it is not applicable to this case. In the Revised Codes of 1877 the section appears in a chapter relating to the time of commencing actions. We believe the statute was adopted in order to abolish in this Code State the ancient common-law doctrine that when a person had acquired land by disseisin, abatement, or intrusion, and died seised of the land, the descent of it to his heir took away or tolled the real owner's right of entry, so that he could recover the land only by an action. See Black's Law Dictionary, "descent cast."

We reluctantly conclude that the trial court erred as to the law, and the judgment is therefore reversed and the case is remanded for entry of judgment in favor of appellants as to title, and for further proceedings relating to the reasonable value of improvements made by appellees, pursuant to Sections 32–17–09, 32–17–10, and 32–17–12, N.D.C.C.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.